526 A.2d 359

Concetta GALLO

v.

YAMAHA MOTOR CORPORATION, U.S.A., Bruce Ott, Steven J. Polansky and Pocono West, Inc., A Pennsylvania Corporation and Yamulla Trucking, Inc. and Yamulla Enterprises, Inc., t/a Lake Harmony Estates.

Appeal of YAMULLA TRUCKING, INC. and Yamulla Enterprises, Inc. t/a Lake Harmony Estates.

Superior Court of Pennsylvania.

Argued Oct. 2, 1986.

Filed March 26, 1987.

Reargument Denied June 8, 1987.

Robert E. Simpson, Jr., Easton, for appellants.

James C. Hogan, Easton, for Gallo, appellee.

Barbara L. Hallenbach, Easton, for Yamaha Motor Corp., appellee.

Before CAVANAUGH, McEWEN and MONTEMURO, JJ.

MONTEMURO, Judge:

Appellant challenges the denial of its post-trial motions by the Northampton Court of Common Pleas. Because the trial court committed several errors of consequence, we reverse and remand for a new trial.

This case arises from a January 28, 1978 collision between an automobile and the snowmobile upon which appellee Concetta Gallo was riding as a passenger. Ms. Gallo filed an action against appellees Bruce Ott, driver of the snowmobile, Steven J. Polansky, driver of the automobile, and Yamaha Motor Corporation, U.S.A., manufacturer of the snowmobile. Yamaha joined appellants Yamulla Trucking, Inc. and Yamulla Enterprises, Inc., both trading as Lake Harmony Estates (Lake Harmony). Lake Harmony owned the road on which the collision occurred.[1] The road, which was covered with snow and ice at the time of the mishap, meanders through a residential resort that Lake Harmony had developed in the Pocono Region of Carbon County. Ms. Gallo alleged in her first amended complaint that Mr. Polansky and Mr. Ott had operated their respective vehicles negligently. She further alleged that Yamaha had defectively designed the fateful snowmobile. In its complaint joining Lake Harmony as an additional defendant, however, Yamaha charged that Lake Harmony, as a landowner, had caused Ms. Gallo's injuries by negligently failing to keep its road safe for automobile and snowmobile traffic.

The ten day trial of these claims began on February 25, 1985. At its conclusion, after the jury had received the court's instruction but before it retired to deliberate, the court ruled on the parties' suggested points for charge. Three of these rulings concern us here. First, the court denied Lake Harmony's request for an instruction on the Recreation Use of Land and Water Act, 68 P.S. § 477–1 *et*

---

1. Ms. Gallo initially sued Pocono West, Inc. as the owner of the road. When discovery revealed that Lake Harmony actually owned the road, counsel agreed by stipulation to drop Pocono West as a party. On appeal, only Ms. Gallo and Lake Harmony filed briefs and argued. Yamaha filed a brief. Mr. Polansky and Mr. Ott, although nominal appellees, did not participate.

*seq.* Lake Harmony had asserted in new matter that the Act immunized Lake Harmony from all liability for Ms. Gallo's injuries.[2] Second, the court refused to caution the jury expressly against awarding damages for delay. Lake Harmony had requested the court pursuant to Pa. R.C.P. 238(d) to instruct the jury not to award Ms. Gallo any damages for delay "because this is a matter for the court." Third, the court refused to instruct the jury not to compensate Ms. Gallo for those losses covered by the now-repealed Pennsylvania No-fault Motor Vehicle Insurance Act, 40 P.S. § 1009.101 *et seq.*, which was in effect at the time of Ms. Gallo's injury. The court had ruled immediately prior to trial that it would admit evidence of any medical expenses or lost wages Ms. Gallo suffered as a result of the accident. Several of the defendants had argued that the No-fault Act precluded recovery in tort of any medical expenses or lost wages that fell within the required limits of No-fault coverage.[3] In deciding to admit the evidence, the court reserved for later disposition the issue of whether the No-fault Act applies to this case. The court indicated that, if required, it would mold the verdict to remove any amounts recoverable under No-fault.

2. Lake Harmony did not raise their Recreation Use Act immunity until January of 1983. Although the trial court denied Lake Harmony's motion to amend its answer to include this defense, we reversed and remanded to allow the amendment. *See Gallo v. Yamaha Motor Corp.*, 335 Pa.Super. 311, 484 A.2d 148 (1984). We did not venture an opinion, however, on the merits of the proposed defense.

3. In a separate action, Ms. Gallo sought to recover medical expenses and lost wages from her own No-fault carrier. The carrier denied the claim on the ground that the snowmobile on which Ms. Gallo was injured was not a "motor vehicle" within the meaning of either the insurance contract or the No-fault Act. The trial court agreed with the carrier and granted judgment on the pleadings against Ms. Gallo. On appeal, this court held that snowmobiles are "motor vehicles," but only in certain circumstances. We therefore remanded to the trial court for a determination of whether those circumstances existed in this case. *See Gallo v. J.C. Penny Cas. Ins. Co.*, 328 Pa.Super. 267, 476 A.2d 1322 (1984). We note that in the current appeal we need not consider which particular No-fault carrier is liable to Ms. Gallo. We need only consider the threshold question of whether Ms. Gallo's No-fault remedies preclude recovery in tort of amounts recoverable under No-fault.

The jury returned with a special verdict on March 8, 1985. The verdict absolved Mr. Polansky and Yamaha of all liability to Ms. Gallo and attributed negligence 70% to Mr. Ott, 25% to Lake Harmony and 5% to Ms. Gallo. The jury awarded damages of $80,000 for medical expenses, $248,000 for lost earnings and $325,000 for such non-economic injuries as pain, suffering, disfigurement and embarrassment. Following a hearing on March 29, 1985, the court added delay damages of $352,620 and then reduced the total verdict to $953,339 to reflect Ms. Gallo's contributory negligence. Lake Harmony filed a timely motion for post-trial relief in which it asked the court to grant judgment n.o.v. or a new trial or to mold the verdict downward. The court *en banc* denied the motion. Lake Harmony's timely appeal followed entry of judgment on April 7, 1986.

We need address only three of the six issues that Lake Harmony presents:

I.  Whether the trial court should have instructed the jury on the applicability of the Recreation Use of Land and Water Act, even though Lake Harmony did not invite the public onto its land.

II. Whether the trial court, when requested to do so, should have cautioned the jury expressly against awarding damages for delay.

III. Whether the partial abolition of tort liability in the now-repealed No-fault Act bars Ms. Gallo's claims for medical expenses against Lake Harmony, a landowner.

## I.

Lake Harmony argues that it is entitled to immunity from liability as a landowner in this case because of the Recreation Use of Land and Water Act., 68 P.S. § 477–1 *et seq.* The General Assembly passed the Act in 1965 expressly "to encourage owners of land to make land and water areas available to the public for recreational purposes." 68 P.S. § 477–1. The Act promotes this goal by limiting landowner

liability for injuries that occur on the land [4] as a result of recreational activity. Section 3 of the Act limits traditional landowner liability as follows:

> Except as specifically recognized or provided in section 6 of this act, an owner of land owes no duty of care to keep the premises safe for entry or use by others for recreational purposes, or to give any warning of a dangerous condition, use, structure, or activity on such premises to persons entering for such purposes.

*Id.* at § 477–3. For landowners who by some means invite or permit recreational activity on their land, Section 4 of the Act contains a slightly different formulation of the immunity standard:

> Except as specifically recognized by or provided in section 6 of this act, an owner of land who either directly or indirectly invites or permits without charge any person to use such property for recreational purposes does not thereby:
>
> (1) Extend any assurance that the premises are safe for any purpose.
>
> (2) Confer upon such person the legal status of an invitee or licensee to whom a duty or care is owed.
>
> (3) Assume responsibility for or incur liability for any injury to persons or property caused by an act or omission of such persons.

*Id.* at § 477–4. As these provisions indicate, however, the immunity is not absolute. Section 6 of the Act preserves landowner liability for "wilful or malicious failure to guard or warn against a dangerous condition, use, structure, or

---

**4.** For purposes of the Act, "land" means "land, roads, water, watercourses, private ways and buildings, structures and machinery or equipment when attached to the realty." 68 P.S. § 477–2(1). Our supreme court recently held that the Assembly intended the Act "to encourage the opening up of large, private land holdings for outdoor recreational use by the general public." *Rivera v. Philadelphia Theological Seminary,* 510 Pa. 1, 15, 507 A.2d 1, 8 (1986). The court therefore concluded that the words "buildings" and "structures," as they appear in Section 2(1) of the Act, 68 P.S. § 477–2(1), mean "ancillary structures attached to open space lands made available for recreation and not to enclosed recreational facilities in urban regions." *Id.*

activity." *Id.* at § 477–6(1). This section also preserves the usual, negligence-based standard of care for those cases in which the landowner has charged the plaintiff a fee or admission price to use the land. *Id.* at § 477–6(2).

Lake Harmony maintains that the trial court should have instructed the jury on these provisions.[5] Ms. Gallo does not dispute that she entered Lake Harmony's land, without charge, to pursue "recreational purposes." Nevertheless, the trial court concluded, and Ms. Gallo now argues, that a landowner can take advantage of immunity under the Recreation Use Act only if he or she has "donated" the land in question to the public. Because the evidence at trial indicated that the road on which the injury occurred was private, the trial court refused Lake Harmony's points for charge on the applicability of the Act. Both the trial court and Ms. Gallo suggest that a landowner must at least indirectly *invite* the public to recreate on the landowner's otherwise private property. We disagree. Nothing in the plain language of the Act imposes this kind of strict quid pro quo.

Of course, our supreme court has cautioned that we must construe the Recreation Use Act narrowly. *See Rivera v. Philadelphia Theological Seminary,* 510 Pa. 1, 507 A.2d 1 (1986). Grants of immunity from suit are "out of harmony, generally, with the modern trend in tort law." *Id.,* 510 Pa. at 12, 507 A.2d at 7.[6] We cannot, however, substitute our own judgment for that of the General Assembly. No court of this Commonwealth can disregard the plain letter of a statute "under the pretext of pursuing its spirit." 1 Pa. C.S.A. § 1921(b). Moreover, as did the court in *Rivera,* we must consider the Act as a whole. We must presume that

5. Lake Harmony also maintains that the trial court erred in ruling immediately before trial that the Act does not apply in this case. Although we agree that the Act *does* apply, Lake Harmony has failed to show how this pre-trial ruling prejudiced the presentation of its case.

6. We note that despite this cautionary language in *Rivera,* the supreme court did not hesitate to apply Recreation Use Act immunity to the Commonwealth in *Commonwealth, Department of Environmental Resources v. Auresto,* 511 Pa. 73, 511 A.2d 815 (1986).

"the General Assembly intends the entire statute to be effective." *Id.* at § 1922(2). *See also id.* at § 1921(a).

In holding that the Recreation Use Act immunizes only those landowners who directly or indirectly "donate" their land to the public, the trial court appears to have relied exclusively on language in Section 4 of the Act. Section 4 applies to the "owner of land who either directly or indirectly invites or permits" others to use his or her land for "recreational purposes." Although this language by itself would support the trial court's conclusion, the Act contains two separate grants of immunity: one in Section 4 and the other in Section 3. By its terms, Section 3 grants immunity to the "owner of land" without reference to whether the owner "invites or permits" others onto his or her property. Section 4 extends the same immunity to the owner who *does* somehow invite or permit recreational activity. Unlike Section 3, however, it further provides that those owners who "invite or permit" recreation do not thereby assure the safety of their premises or confer "the legal status of an invitee or licensee" upon persons using their premises. The need for this further grant of immunity arises from the complexity of landowner liability in our common law. A landowner traditionally has greater responsibility to persons whom the owner invites or permits onto the land than to mere trespassers. *See Jones v. Three Rivers Management Corp.,* 483 Pa. 75, 394 A.2d 546 (1978); Restatement (Second) of Torts §§ 328 to 343B (1965). The Act makes sense as written only if we view Section 3 as a general grant of immunity and Section 4 as an extension of that immunity to cover the special circumstances long recognized in the case law. If we ignore the plain language of these provisions and hold that the Act as a whole applies only to landowners who "invite or permit" others to recreate on the land, we will reduce Section 3 to mere surplusage. The trial court in effect concluded that Section 3 grants the same immunity under the same circumstances as Section 4 does. We decline to attribute such redundancy to the General Assembly. We must remain faithful to the plain letter of the law and to the presumption that the

General Assembly intends every provision of a statute to have effect.[7]

■ In the overall scheme of the Recreation Use Act, Section 3 is the threshold. A defendant landowner crosses this threshold and is therefore entitled to immunity when three conditions coalesce: (1) the landowner did not wilfully or maliciously fail "to guard or warn against a dangerous condition, use, structure, or activity" on the land, 68 P.S. § 477–6; (2) the landowner did not charge the plaintiff for the recreational use of the land, *id.;* and (3) the injured plaintiff entered the land for "recreational purposes," *id.* at § 477–3. The grant of immunity in Section 3 simply does not depend on whether the landowner has encouraged the plaintiff to enter the land. A jury therefore could have found, on the evidence presented in this case, that Lake Harmony was immune from liability. Ms. Gallo certainly did not offer legally conclusive proof that Lake Harmony deliberately disregarded a dangerous condition, structure or activity on its road. Moreover, the evidence presented would easily support a finding that Ms. Gallo entered Lake Harmony's land, without charge, for recreational purposes. The instructions of the trial court "should not exclude any theory, right or defense" that has support in the evidence. *Durkin v. Equine Clinics, Inc.,* 313 Pa.Super. 75, 80, 459 A.2d 417, 419–20 (1983). *See also Speer v. Barry,* 349 Pa.Super. 365, 503 A.2d 409 (1985); 38 P.L.E., Trial §§ 288–89 (1961). We therefore conclude that the trial court erred in this case when it refused to instruct the jury on the applicability of the Recreation Use Act.[8]

---

**7.** Three federal district courts have concluded in recent years, as we conclude now, that the Recreation Use Act immunizes landowners from liability even when the landowner does not "directly or indirectly invite or permit" recreational activity on his or her land. *See Barrett v. Pennsylvania Gas & Water Co.,* 631 F.Supp. 731 (M.D.Pa. 1985); *Livingston v. Pennsylvania Power & Light Co.,* 609 F.Supp. 643 (E.D.Pa.1985); *Hahn v. United States,* 493 F.Supp. 57 (E.D.Pa.1980). Although these decisions do not bind us, the unanimity of result certainly suggests that the language of the Act is clear on this point.

**8.** Even if the Recreation Use Act *does* only apply to those landowners who either directly or indirectly invite or permit recreational activity

Our supreme court's holding in *Rivera* does not alter our conclusion. The *Rivera* court held that the Recreation Use Act does not immunize from liability the owner of an indoor pool located in an urban area. In a footnote, the court observed that "[t]he need to limit owner liability derives from the impracticability of keeping large tracts of largely underdeveloped land safe for public use." *Rivera, supra,* 510 Pa. at 15–16 n. 17, 507 A.2d at 8 n. 17. It added that "[t]he same need does not arise in the case of indoor recreational facilities which, in contrast, are relatively easy to supervise and monitor for safety hazards." *Id.* Thus, the Act does not protect the owners of enclosed and easily supervised realty even though that realty falls within the literal meaning of the word "land" as the Act defines it, 68 P.S. § 477–2(1).

Although the accident in this case occurred on a paved road in a residential development, the Act applies to more than pristine woodlands. The definition of "land" in Section 2 of the Act includes such improvements as "roads ...," private ways and buildings, structures and machinery or equipment when attached to the realty." *Id.* at § 477–1(1). Ms. Gallo's accident, moreover, occurred outdoors on what the evidence suggests was a large tract of land. Lake Harmony's development in the Poconos is far removed from the indoor swimming facility that the court considered in *Rivera.*

## II.

Lake Harmony further argues that the trial court should have cautioned the jury expressly against awarding dam-

on their land, we note that the trial court, in its instruction to the jury, characterized Ms. Gallo as a licensee. The definition of "licensee" that the court read derived from the Restatement (Second) of Torts § 330, which defines "licensee" as "a person who is privileged to enter or remain on land only by virtue of the possessor's consent." If Ms. Gallo was a licensee at the time of the accident, she certainly was on Lake Harmony's property with at least indirect permission from Lake Harmony. In *Wiegand v. Mars National Bank,* 308 Pa.Super. 218, 454 A.2d 99 (1982), we held that the Act shielded a landowner from liability to a licensee who had entered the landowner's property for recreational purposes.

ages for delay. In its points for charge, Lake Harmony had requested the court to instruct the jury as follows: "If you find for the Plaintiff, you shall not award the Plaintiff any damages for delay because this is a matter for the Court." The proposed instruction borrows almost verbatim from Pa. R.C.P. 238(d), which provides that "[t]he court may, and on request of a party shall, charge the jury that if it finds for the plaintiff, it shall not award the plaintiff any damages for delay because this is a matter for the court." Rule 238 in general requires the trial court to add delay damages to any compensatory verdict in actions "seeking monetary relief for bodily injury, death or property damage." Pa. R.C.P. 238(a). The trial court must include delay damages only if the defendant has failed before trial to make a written settlement offer that at least approximates the amount of the compensatory award. Our supreme court recently noted in *Craig v. Magee Memorial Rehabilitation Center*, 512 Pa. 60, 62, 515 A.2d 1350, 1352 (1986), that it promulgated Rule 238 "to clear dockets cluttered by unreasonable refusals to pay what was owed." When the rule applies, however, it precludes any recovery of delay damages from other sources. *See Robert Wooler Co. v. Fidelity Bank*, 330 Pa.Super. 523, 479 A.2d 1027 (1984) (double recovery "is not permitted"). The cautionary instruction in subdivision (d) therefore serves a critical purpose. It protects "defendants in jury trials from possible incurrence of double damages for delay." 1 Goodrich-Amram 2d § 238:1 (Supp.1986). Absent the instruction, the jury might include damages in its verdict, which the court might then increase by adding further delay damages pursuant to Rule 238(a). *Id.* For this reason, Rule 238(d) requires the trial court, upon request of a party, to give the cautionary instruction that Lake Harmony sought in its points for charge.

The trial court ignored this mandate, thereby exposing Lake Harmony to the very risk that subdivision (d) exists to prevent. Nevertheless, the trial court believes that it adequately cautioned the jury against awarding delay damages. We recognize that a trial court may refuse an otherwise valid point for charge if the court's charge to the

jury, when viewed in its entirety, adequately covers the point. *See Olson v. Dietz*, 347 Pa.Super. 1, 500 A.2d 125 (1985); *Bohner v. Stine*, 316 Pa.Super. 426, 463 A.2d 438 (1983). Moreover, even if the court erred when it instructed the jury, we will reverse only if the error prejudiced the appellant. *See Mickey v. Ayers*, 336 Pa.Super. 512, 485 A.2d 1199 (1984).

■ In its opinion, the trial court directs our attention to the following language from its charge to the jury:

Now, the *only* items of damage recoverable by the plaintiff, Concetta Gallo—I will discuss each of them in more detail in a moment—are as follows: damages for her medical expenses; damages for her lost earnings; damages for her pain, suffering, her loss of pleasures of life, disfigurement, embarrassment; and the permanency of her injuries.

Trial Court Opinion at 7 (emphasis supplied by trial court). The court suggests that use of the word "only" to introduce this exhaustive enumeration of recoverable damages sufficiently warned the jury not to award damages for delay. We disagree. Any negative inference the jury might have drawn from the court's language was insufficient to forestall the possibility that the jurors included damages for delay in their verdict. Rule 238(d) anticipates that jurors will act on their sympathies when asked to compensate the long-suffering victim of a begrudging tortfeasor. The cautionary instruction assures the jury that, if appropriate, the court itself will assess damages to compensate for any delay in the victim's recovery. By requiring the trial court to give this instruction when a party requests it, our supreme court has indicated that negative inferences will not substitute for a direct warning on delay damages.[9] The

---

9. We note that in some instances the trial court can cover a requested point for charge with a negative inference. For example, in *Sprague v. Walter*, 357 Pa.Super. 570, 516 A.2d 706 (1986), appellant in a libel case asked the trial court to instruct the jury that it could not award presumed damages absent clear and convincing evidence. The trial court had instructed that clear and convincing evidence was required to establish damages. We concluded that this instruction, "by necessi-

court certainly realized when it promulgated Rule 238(d) that in most cases an adequate instruction on damages implicitly warns the jury not to award damages beyond those which the trial judge discusses. Nevertheless, the possibility of prejudice to the defendant in the form of a double assessment of delay damages was great enough to justify the cautionary instruction. We therefore conclude that neither the above-quoted language nor the instruction as a whole adequately covered Lake Harmony's requested point for charge.

Ms. Gallo argues that this error did not prejudice Lake Harmony. She points out that the jury returned a special verdict in which it awarded specific sums for specific kinds of damage and that these sums correspond to the evidence of damages presented at trial. We find, however, that the form of the verdict in this case did nothing to reduce the possibility of double recovery. The verdict slip required the jury to award damages separately for "medical expenses," for "lost wages" and for "pain, suffering, loss of pleasures, disfigurement and embarrassment." The slip thus echoed the language that the court had used in its instructions. The negative inference that arises from this language, as we have indicated already, does not by itself bar a visceral response from the jury. Acting on their emotions, the jury very well could have compensated Ms. Gallo for delay by inflating any or all of the specific items of damages. As with a general verdict, we can only speculate about the intent of the jury. Even if we assume that the amounts the jury awarded for "medical expenses" and "lost wages" are anchored solidly in the evidence, damages for "pain, suffering, loss of pleasures, disfigurement and embarrassment" defy precise quantification. Use of the special verdict in this case does not assure us that the jurors kept their hearts and their minds in the proper perspective. If we are able to conclude that an erroneous charge might have prejudiced the appellant, we must grant a new trial, even

ty, would negate the award of presumed damages." *Id.*, 357 Pa.Superior Ct. at 612 n. 21, 516 A.2d at 728 n. 21.

though we cannot ascertain the extent to which the error influenced the jury. *See Vaughn v. Philadelphia Transportation Co.*, 417 Pa. 464, 209 A.2d 279 (1965); *Murphy v. Publicker Industries, Inc.*, 357 Pa.Super. 409, 516 A.2d 47 (1986).[10]

We recognize, of course, that in *Craig v. Magee Memorial Rehabilitation Center, supra,* our supreme court suspended the "mandatory provisions" of Rule 238. The *Craig* court held that Rule 238 transgresses due process "by denial of a forum to assess fault for the delay." *Id.*, 512 Pa. at 65, 515 A.2d at 1353. "In short," the court concluded, "Rule 238 has become an uncontestable presumption that all fault lies with a defendant." *Id.* In place of the rule, the court established an interim procedure for the assessment of delay damages. The new procedure is not automatic. A party now must petition for delay damages, and the court must consider which, if any, of the parties is responsible for delaying the recovery. This procedure will remain in effect until the court promulgates a new rule on delay damages.

The suspension of Rule 238, however, is prospective only. The *Craig* court indicated that "[t]hose parties whose cases are now in the appellate or post-trial process, who have not asserted attacks on the Rule 238 aspect of the damage award, may not now assert such challenges." *Id.*, 512 Pa. at 66, 515 A.2d at 1353. The present case had moved well into the appellate process before the supreme court filed the *Craig* decision on October 8, 1986. Moreover, the only issue that Lake Harmony raises concerning Rule 238 is whether the trial court should have read the cautionary

---

10. Both Ms. Gallo and the trial court assert that Lake Harmony waived the delay damages issue when counsel failed to take a specific exception to the denial of the requested point for charge. Although Pa. R.A.P. 302(b) requires that parties take specific exception to erroneous language or omissions in the jury charge, a party can preserve his or her objection by submitting a specific point for charge on the disputed point. *See Broxie v. Household Finance Co.*, 472 Pa. 373, 372 A.2d 741 (1977); *Elder v. Orluck*, 334 Pa.Super. 329, 483 A.2d 474 (1984).

instruction.[11] Lake Harmony does not challenge the addition of delay damages to the jury's verdict. The *Craig* case therefore does not apply to this appeal. Even if we regard the "mandatory provisions" of Rule 238 as suspended for purposes of our review, we nonetheless find that the supreme court did not intend to suspend subdivision (d). By suspending the "mandatory provisions" of the Rule and replacing them with a fault-based assessment procedure, the court sought to avoid punishing defendants *qua* defendants. The cautionary instruction serves the same purpose. It reduces the possibility that the jury will compensate a plaintiff for delay when the plaintiff very well could have caused the delay. In fact, the instruction is all the more important in light of the determination that Rule 238 unfairly prejudices defendants.

### III.

Lake Harmony also contends that the trial court should have informed the jury of Ms. Gallo's eligibility for "basic loss benefits" under the No-fault Act,[12] which was in effect at the time of the accident.[13] "Basic loss benefits" include

11. *Cf. Shellhamer v. Gray,* 359 Pa.Super. 499, 519 A.2d 462 (1986) (appellant challenged award of delay damages as "unfair, confiscatory, and unreasonable"; case remanded for proceedings consistent with *Craig* ); *Dale v. Baltimore & Ohio R.R. Co.,* 359 Pa.Super. 477, 519 A.2d 450 (1986) (appellant argued that it was not liable for payment of any delay damages under Pa.R.C.P. 238; same disposition).

12. No-fault Motor Vehicle Insurance Act of July 19, 1974, P.L. 489, No. 176, *repealed by* Act of February 12, 1984, P.L. 26, No. 11, § 8(a), eff. October 1, 1984.

13. Lake Harmony also suggests that the court should have informed the jury that a health insurance carrier, Blue Cross and Blue Shield, paid Ms. Gallo's medical bills. We disagree. In Pennsylvania, a tort victim can recover for his or her injuries regardless of whether he or she has received compensation for those injuries from a collateral source. *See Denardo v. Carneval,* 297 Pa.Super. 484, 444 A.2d 135 (1982). This "collateral source" rule prevents the wrongdoer "from taking advantage of the fortuitous existence of a collateral remedy." *Greenwood v. Hildebrand,* 357 Pa.Super. 253, 264, 515 A.2d 963, 968 (1986). We therefore conclude that reference to the Blue Cross and Blue Shield payments would have been irrelevant and prejudicial. Of course, the collateral source rule does not exclude information con-

all reasonable medical expenses and up to $15,000 for "work loss." *See* 40 P.S. § 1009.202(a) and (b). The trial court denied Lake Harmony's requested point for charge on this issue. The court also refused to mold the verdict to eliminate those amounts that Ms. Gallo could recover as "basic loss benefits" under No-fault. We find that the trial court erred by denying the requested instruction.

■ In *Holland v. Zelnick,* 329 Pa.Super. 469, 478 A.2d 885 (1984), we upheld a charge to the jury in which the trial court had indicated that plaintiff's No-fault carrier would pay for plaintiff's medical expenses and work loss. The trial court warned the jury not to compensate plaintiff for these items. We concluded that "[u]nder the no-fault law it is not only proper, but necessary, to instruct the jury as to the receipt of certain collateral benefits by a plaintiff involved in an automobile accident who is seeking recovery for injuries allegedly sustained therein." *Id.,* 329 Pa.Superior Ct. at 476, 478 A.2d at 888. The need for this instruction arises from Section 301(a) of the No-fault Act, 40 P.S. § 1009.301(a), which partially abolished tort liability for both "economic" and "non-economic" [14] losses suffered in motor vehicle accidents. Between July 19, 1974, the date of enactment, and October 1, 1984, the effective date of repeal, common law tort remedies ceased to exist in Pennsylvania for the motor vehicle accident victim, unless the No-fault Act itself specifically preserved them. *See Martin v. Soblotney,* 502 Pa. 418, 466 A.2d 1022 (1983); *Singer v. Sheppard,* 464 Pa. 397, 346 A.2d 897 (1975); D. Shrager, The Pennsylvania No-fault Motor Vehicle Insurance Act § 2:32 (1979). Section 301(a)(4) of the Act contained an important exception to this general abolition. Accident victims could

cerning the receipt of No-fault benefits. *See Holland v. Zelnick,* 329 Pa.Super. 469, 478 A.2d 885 (1984).

14. The Act abolished liability for "non-economic" injuries, such as pain and suffering, unless the injuries met one of four conditions. *See* 40 P.S. § 1009.301(a)(5)(A)–(D). This appeal does not challenge Ms. Gallo's right to recover for her non-economic inflictions.

still recover in tort those economic losses that exceeded the required "basic loss benefits" coverage. *See* 40 P.S. § 1009.301(a)(4). This meant, of course, that the No-fault Act abolished any action in tort to recover damages for work loss under $15,000 or for medical expenses. *See Martin v. Soblotney, supra.* We therefore concluded in *Holland* that the trial court properly instructed the jury not to award these damages. The instruction ensures that the accident victim will not recover that which the No-fault Act has forbidden. If the trial court believes an instruction on the applicability of No-fault will confuse the jury, the court can provide the same assurance by molding the verdict to exclude amounts recoverable under the Act. *See Wilson v. Jones*, 341 Pa. Super. 280, 491 A.2d 262 (1985); *Williams v. Dulaney*, 331 Pa.Super. 373, 480 A.2d 1080 (1984). In the case now before us, the trial court neither instructed the jury nor molded the verdict.

Ms. Gallo contends, however, that Lake Harmony, as a landowner, cannot take advantage of the No-fault Act to avoid liability. The Act nowhere required landowners, as such, to maintain No-fault security. Ms. Gallo therefore reasons that the General Assembly could not have intended to eliminate the liability of landowners upon whose premises a motor vehicle accident occurs. We disagree. Section 301(a) extinguished the right to recover for "any injury" that occurred within the Commonwealth as long as the injury arose "out of the maintenance or use of a motor vehicle." 40 P.S. § 1009.301(a). As one commentator has recognized, this broad abolition of tort liability differs from those no-fault laws of other jurisdictions that exempt only secured motor vehicle owners from liability. *See* D. Shrager, *supra*, at § 2:3.2 (citing the no-fault laws of Connecticut, Florida, Massachusetts, New Jersey and North Dakota). It also differs from the "exclusiveness of remedy" provision in Section 303(a) of the Pennsylvania Workmen's Compensation Act, 77 P.S. § 481(a), which eliminated the tort liability of employers in exchange for a "more equitable and certain

system of compensation" for injured employees, *Kosowan v. MDC Industries, Inc.*, 319 Pa.Super. 91, 98, 465 A.2d 1069, 1072 (1983). The No-fault Act did not establish a trade-off between two classes of potential litigants such as "employers" and "employees." It simply abolished one system of injury compensation in favor of another, supposedly more efficient and less costly system. *See* 40 P.S. § 1009.102 ("Findings and purposes"). Unlike the Workmen's Compensation Act, Section 301(a) of the No-fault Act did not specify whose tort liability was abolished. The General Assembly therefore must have intended to abolish the liability of all potential defendants in motor vehicle accident cases unless a specific exception applied.

The plain language of Section 301(a) bolsters our conclusion. Subsection 301(a)(2) provided in part that "[a] person in the business of designing, manufacturing, repairing, servicing, or otherwise maintaining motor vehicles remains liable for injury arising out of a defect in such motor vehicle which is caused or not corrected by an act or omission in the course of such business." 40 P.S. § 1009.301(a)(2). Thus, the Act expressly preserved intact the liability of motor vehicle manufacturers and repairers. The General Assembly, however, need not have excepted this class of defendants from the abolition of tort liability if, as Ms. Gallo urges, the abolition applied only to those defendants whom the Act required to maintain No-fault security. Manufacturers and repairers are as removed from the No-fault system as landowners. The General Assembly nonetheless deemed necessary the express retention of manufacturer and repairer liability in tort. We can only conclude from this language that the abolition of tort liability in the No-fault Act did not hinge on whether the Act required the defendant to maintain security. The Assembly did not intend to benefit a particular class of defendants.

The trial court in its opinion asserts that it denied the requested No-fault instruction because, at the time, Ms. Gallo had not actually received "basic loss benefits" from a

No-fault carrier. We reject this rationale for two reasons. First, it lacks any support in the language of the Act. Second, if we condition the abolition of tort liability upon the actual receipt of "basic loss benefits," we would, in effect, reinstate a cause of action against Lake Harmony merely because the responsible No-fault carrier had not yet paid Ms. Gallo at the time of trial.[15] This would reward Ms. Gallo with a potential double recovery and punish Lake Harmony for a misfortune it did not cause. We presume that the General Assembly did not intend such an absurd and inequitable result. *See* 1 Pa.C.S.A. § 1922(1).[16]

## IV.

For the above reasons, we reverse the order of the trial court and remand for a new trial in which only Ms. Gallo, Lake Harmony and Mr. Ott will participate. The errors in the charge to the jury did not affect that portion of the verdict which exculpated Yamaha and Mr. Polansky. As we recognized in *Potenburg v. Varner*, 284 Pa.Super. 19, 23, 424 A.2d 1370, 1372 (1981), "[a] defendant whom the jury has exculpated should not be subject to a new trial unless there was trial error as to him." *See also Sternberg v. Dixon*, 411 Pa. 543, 192 A.2d 359 (1963).

Order reversed and case remanded for a new trial limited to the claims between Concetta Gallo, Bruce Ott and Lake Harmony Estates.

**15.** Lake Harmony alleges that Ms. Gallo has since received $35,000 in No-fault benefits.

**16.** We need not consider issues III, IV and V in Lake Harmony's brief. Issue III challenges the sufficiency of the evidence for purposes of proving that Lake Harmony breached a duty of care owed to Ms. Gallo. Because we have granted a new trial at which the parties will present their evidence de novo, we decline now to reach the merits of Lake Harmony's arguments. Issue V challenges the trial court's decision to allow what Lake Harmony labels "undisclosed expert testimony." Again, our grant of a new trial renders this point moot. The trial court adequately disposed of issue IV in its opinion.