## Hill v. Kamppi

*Ted G. Miller and Joseph B. Sted,* for plaintiffs.
*Brian Baxter,* for intervenor.

JIULIANTE, *J.,* September 3, 1987 — This matter is before the court on the petition of National Fuel Gas Supply Corporation for leave to intervene as a party-plaintiff or use-plaintiff in the above-captioned cases. For the reasons set forth below, petitioner's request will be denied.

These actions arose from a motor vehicle collision which occurred on August 26, 1985, as a result of which Joseph A. Hill died and Merle D. Walters sustained serious injuries. At the time of the collision, Hill was operating a truck owned by NFG in which Walters was a passenger. Both Hill and Walters were acting within the scope of their employment with NFG at the time of the accident. The NFG truck collided with a truck being operated by defendant Mark W. Kamppi and owned by defendant Avonia Farms Inc. The accident alleged resulted from Kamppi's loss of control of the vehicle he was operating.

The Commonwealth of Pennsylvania, Department of Transportation and Winters & Flemming Inc. are named as defendants in connection with the condition of the road at the time of the accident. The manufacturer and seller of a fog sealant which

was applied to the road surface shortly before the accident have been joined as additional defendants.

NFG, as the employer of Hill and Walters, has paid workers' compensation benefits for medical expenses and lost wages, and, in the case of Joseph Hill, funeral expenses and death benefits. NFG seeks to intervene because it believes that it is entitled to be subrogated to the extent of the benefits it has paid against any award any plaintiff may obtain form tortfeasors.

Because the injuries here arose from the operation of or maintenance of a motor vehicle, the Pennsylvania Motor Vehicle Financial Responsibility Law is applicable. Section 1720 of the act reads as follows:

"In actions arising out of the maintenance or use of a motor vehicle, there shall be no right of subrogation or reimbursement from a claimant's tort recovery with respect to workers' compensation benefits, benefits available under sections 1711 (relating to required benefits), 1712 (relating to availability of benefits) or 1715 (relating to availability of adequate limits) or benefits in lieu thereof paid or payable under section 1719 (relating to coordination of benefits)." 75 Pa. C.S. § 1720 (Purdon Supp. 1987).

Where the words of a statute are unambiguous and their meaning is clear, the court need not nor should not resort to statutory construction to ascertain legislative intent. *Philadelphia Housing Authority v. Commonwealth, Labor Relations Board,* 508 Pa. 576, 499 A.2d 294 (1985). The statute in the present case could not be clearer — it plainly denies the right of subrogation with respect to workers' compensation benefits.

Despite the plain language of the statute, NFG urges us to consider that the legislature's purpose in repealing the prior No-fault Act was to curb rising

insurance costs, due to the availability of double re-covery from various insurance carriers. In light of that purpose, NFG argues, the legislature must have intended that subrogation be available to work-ers' compensation carriers, since to abrogate that right would result in double recovery to tort victims.

However, a review of the legislative history of sec-tion 1720 reveals that the legislature knew exactly what it was doing in abolishing subrogation. An amendment to section 1720 was offered in the House on December 13, 1983 which would have preserved the right of subrogation for municipalities as employers, the motivation for the amendment be-ing the recoupment of taxpayers' dollars which are used to pay benefits to municipal employees. In opposition to the amendment, Majority Leader James Manderino pointed out that most municipal-ities do not use tax dollars to pay benefits but rather, purchase workers' compensation coverage through an insurance carrier. Thus, preserving subrogation for municipalities created no exception to taking payment "from one insurance company's pocket and putting it into another insurance company's pocket." 1983 Legislative Journal — House, at 2171. The debate in the legislature clearly indicates that the legislature not only recognized that section 1720 abrogated the right to subrogation completely, but also intended it to do so.

Moreover, we are not convinced that the abolition of subrogation necessarily leads to a ."windfall" by way of double recovery for tort victims. As the par-ties to the present action have argued, the damages caused by the tortfeasor may well exceed his liabil-ity coverage. Thus, if a victim must surrender his tort recovery to the extent of the economic benefits he has received through workers' compensation, he may have very little left, if any, to compensate him

for non-economic injury. As a result of subrogation, a tort victim could realize less than complete recovery of his damages. While we acknowledge that the legislature, in repealing the No-fault Act, was concerned with the rising costs of insurance, we do not agree that section 1720, as written, flies in the face of that legislative intent. The statute is clear on its face and the legislative history supports the statutory language.

NFG next contends that if we find section 1720 to mean what it says, then the statute is unconstitutional in that it denies workers' compensation carriers due process and equal protection of the law, as required by both the U.S. Constitution and the Constitution of the Commonwealth of Pennsylvania. The parties agree that economic legislation, such as the Pennsylvania Motor Vehicle Financial Responsibility Law, may discriminate between classes as long as the differing treatment accorded is reasonable and bears a substantial relation to the purpose of the legislation. *Hayes v. Erie Insurance Exchange,* 493 Pa. 150, 425 A.2d 419 (1981). A statute is presumed to be constitutional "unless it *clearly, palpably* and *plainly* violates the Constitution . . . all doubt is to be resolved in favor of sustaining the legislation." *Singer v. Sheppard,* 464 Pa. 387, 393, 346 A.2d 897, 900 (1975). (emphasis in original) NFG argues that, by being denied subrogation workers' compensation, carriers are treated differently than workers' compensation carriers paying benefits for injuries not related to motor vehicle accidents and motor vehicle insurance carriers paying first party benefits for motor vehicle accidents. NFG further argues that this different treatment bears no rational relationship to the purpose of providing prompt and complete relief to motor vehicle accident victims.

However, it is this very purpose which supports the denial of subrogation to workers' compensation carriers. By way of explanation, we paraphrase the exemplary argument of plaintiffs. Under section 1702 of the Motor Vehicle Financial Responsibilty Law, an insured must be able to respond in damages for liability arising from the maintenance or use of a motor vehicle in an amount of $15,000 for injuries to one person in any one accident. The Catastrophic Loss Trust (CAT) fund created by section 1764 of the act applies only to medical expenses in excess of $100,000 up to a lifetime aggregate of $1,000,000 per claimant. Thus, a victim who suffers damages in excess of $15,000 at the hands of a tortfeasor with coverage limited to that amount will not receive double recovery of wage loss and medical benefits. Moreover, there will never be double recovery of those benefits under the CAT fund because it pays no wage loss benefits and it has only secondary responsibility for medical expenses over and above $100,000, workers' compensation carriers being given primary responsibility pursuant to section 1766 of the act. It becomes apparent, then that the victim described herein may not only fail to receive a windfall but just as likely, may receive less than full compensation for his losses. The injured victim who is forced, through subrogation, to turn over to his workers' compensation source funds he has recovered from a tortfeasor may end up realizing nothing for his non-economic losses. The elimination of subrogation, thus, furthers the goal of providing *complete* compensation to the innocent victim of a motor vehicle accident.

In addition, the different treatment accorded to the workers' compensation carrier bears a rational relationship to the purpose of the legislation. Again, as plaintiffs argue, workers' compensation carriers

who pay benefits as the result of an accident not related to a motor vehicle accident may well be subrogated to the rights of the victim to recover from a manufacturer-defendant or a health care provider. These defendants, as distinguished from a motor vehicle operator, are likely to have liability coverage far in excess of $15,000 and therefore, will be more likely to fully compensate the tort victim. Subrogation in those situations seems appropriate because the chances of shortchanging the victim are slim. As to NFG's comparison of workers' compensation carriers and motor vehicle insurance carriers, neither group is entitled to subrogation pursuant to section 1720 and the fact that the workers' compensation carrier's liability is unlimited, whereas the vehicle insurance carrier's is capped, can be reflected in its premium just as the motor vehicle insurance carrier's liability can be reflected in the cost of its coverage.

We find that the statute, as written, passes constitutional muster in that the legislature balanced the competing interests of various insurance carriers against those of motor vehicle accident victims and made a rational decision to eliminate the right of subrogation. "It is not our function to displace rationally based legislative judgment," see *Carroll v. County of York,* 496 Pa. 363, 437 A.2d 394 (1981) and we decline NFG's invitation to do so.

Finally, NFG argues that even if section 1720 says what it means and is held to be constitutional as written, it does not apply to any recovery had from the Commonwealth of Pennsylvania or Winters & Flemming Inc. because their liability arises from the condition of the highway at the time of the accident and not the maintenance or use of a motor vehicle. Section 1720 begins with the language, "in actions arising out of the maintenance or use of a

motor vehicle . . ." 75 Pa.C.S. §1720 (Purdon Supp. 1987). The action here clearly arose from the maintenance or use of a motor vehicle and regardless of the theory of the liability applicable to each defendant, section 1720 applies to any recovery from any defendant. The identical argument was made in reference to the repealed No-fault Act, 40 P.S.A. §1009.301 (Purdon 1987), and was soundly rejected in *Gallo v. Yamaha Motor Corp., U.S.A.,* 363 Pa. Super. 308, 526 A.2d 359 (1987).

### ORDER

And now, September 3, 1987, upon consideration of the petition for leave to intervene filed on behalf of National Fuel Gas Supply Corporation and the responses thereto, it is hereby ordered, adjudged and decreed that the petitioner's request be and hereby is denied.