571 A.2d 373

**Robert FRIEDMAN, Appellant,**

**v.**

**GRAND CENTRAL SANITATION, INC., Appellee.**

Supreme Court of Pennsylvania.

Submitted Jan. 25, 1990.

Decided March 19, 1990.

Philip D. Lauer, Easton, for appellant.

Robert E. Simpson, Jr., Easton, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

This case involves the interpretation of the Pennsylvania Recreation Use of Land and Water Act, 68 P.S. §§ 477-1 to 477-8, as pertains to its purpose and applicability. We must determine whether the act provides immunity for all landowners whose land is used for recreational purposes, as it says, or whether its protection is limited to landowners who invite the public to use their land for recreation. We hold that the statute affords protection to owners whose land is used for recreational purposes free of charge, even though the landowner has not donated the land to the public for such purposes.

The cause of action arose as follows. In 1984, Robert Friedman, appellant, was hunting on land adjacent to that of Grand Central Sanitation, Inc. Appellant inadvertently wandered onto the land of Grand Central, which was used as a sanitary landfill, though the land was posted with "no trespassing" signs. Appellant allegedly was overcome with fumes from waste material and fell into a large open trench, injuring himself.

When he sued to recover for his injuries, Grand Central defended on several grounds. First, it claimed that in addition to posting its property, it deployed personnel to patrol the property and pursued a policy of prosecuting trespassers. Second, it claimed that appellant was injured in a trench which was so obvious and clearly visible that no one had ever fallen in it before so that appellant was contributorily negligent. Finally, it raised the immunity of the Recreation Use of Land and Water Act, claiming that appellant had entered on its land without charge for recreational purposes, implicating the act, and that Grand Central was therefore not liable for appellant's injuries, having no duty to keep the premises safe or to give any warning of a dangerous condition, use, structure, or activity on its premises.

The trial court entered summary judgment for Grand Central after the parties stipulated that a wilful or malicious failure to warn was not at issue, and that Grand Central did not charge a fee to those entering on its property. The court based its decision on 68 P.S. § 477–3, as interpreted in *Gallo v. Yamaha Motor Corp.*, 363 Pa.Super. 308, 526 A.2d 359 (1987). The statute states:

§ **477–3. Duty to keep premises safe; warning**

Except as specifically recognized or provided in section 6 of this act, an owner of land owes no duty of care to keep the premises safe for entry or use by others for recreational purposes, or to give any warning of a dangerous condition, use, structure, or activity on such premises to persons entering for such purposes.

In *Gallo, supra,* the Superior Court rejected the claim that "a landowner must at least indirectly *invite* the public to recreate on the landowner's otherwise private property," holding instead: "By its terms, Section 3 grants immunity to the 'owner of land' without reference to whether the owner 'invites or permits' others onto his or her property." *Gallo,* 363 Pa.Super. at 316, 526 A.2d at 363.

To aid in its interpretation, the statute is brief enough to quote in its entirety.

## § 477–1. Purpose; liability

The purpose of this act is to encourage owners of land to make land and water areas available to the public for recreational purposes by limiting their liability toward persons entering thereon for such purposes.

## § 477–2. Definitions

As used in this act:

(1) **"Land"** means land, roads, water, watercourses, private ways and buildings, structures and machinery or equipment when attached to the realty.

(2) **"Owner"** means the possessor of a fee interest, a tenant, lessee, occupant or person in control of the premises.

(3) **"Recreational purpose"** includes, but is not limited to, any of the following, or any combination thereof: hunting, fishing, swimming, boating, camping, picnicking, hiking, pleasure driving, nature study, water skiing, water sports and viewing or enjoying historical, archaeological, scenic, or scientific sites.

(4) **"Charge"** means the admission price or fee asked in return for invitation or permission to enter or go upon the land.

## § 477–3. Duty to keep premises safe; warning

Except as specifically recognized or provided in section 6 of this act, an owner of land owes no duty of care to keep the premises safe for entry or use by others for recreational purposes, or to give any warning of a dangerous condition, use, structure, or activity on such premises to persons entering for such purposes.

## § 477–4. Assurance of safe premises; duty of care; responsibility, liability

Except as specifically recognized by or provided in section 6 of this act, an owner of land who either directly or indirectly invites or permits without charge any person to use such property for recreational purposes does not thereby:

(1) Extend any assurance that the premises are safe for any purpose.

(2) Confer upon such person the legal status of an invitee or licensee to whom a duty of care is owed.

(3) Assume responsibility for or incur liability for any injury to persons or 'property caused by an act of [sic] omission of such persons.

### § 477–5.  Land leased to State or subdivision

Unless otherwise agreed to in writing, the provisions of sections 3 and 4 of this act shall be deemed applicable to the duties and liability of an owner of land leased to the State or any subdivision thereof for recreational purposes.

### § 477–6.  Liability not limited

Nothing in this act limits in any way liability which otherwise exists:

(1) For wilful or malicious failure to guard or warn against a dangerous condition, use, structure, or activity.

(2) For injury suffered in any case where the owner of land charges the person or persons who enter or go on the land for the recreational use thereof, except that in the case of land leased to the State or a subdivision thereof, any consideration received by the owner for such lease shall not be deemed a charge within the meaning of this section.

### § 477–7.  Construction of act

Nothing in this act shall be construed to:

(1) Create a duty of care or ground of liability for injury to persons or property.

(2) Relieve any person using the land of another for recreational purposes from any obligation which he may have in the absence of this act to exercise care in his use of such land and in his activities thereon, or from the legal consequences of failure to employ such care.

### § 477–8.  Repealer

The act of September 27, 1961 (P.L.1696), entitled [section 1629 of Title 12], is repealed.

All other acts or parts of acts are repealed in so far as inconsistent herewith.

The tension, obviously, arises between the terms of sections one and three. If the purpose of the act, stated in section one, is to encourage owners to make their land available to the public for recreation, why should section three immunize owners whose land is used for recreational purposes without their invitation or permission?

Appellant argues that any interpretation of section three which grants immunity to appellee is inconsistent with the purpose of the act. He claims that there would be no incentive for a landowner to permit public recreation on his land if a landowner such as appellee, who prohibits entry on his land, is nevertheless granted immunity under the statute.

The answer to this argument is given by the Superior Court:

[T]he Act contains two separate grants of immunity: one in Section 4 and the other in Section 3. By its terms, Section 3 grants immunity to the "owner of land" without reference to whether the owner "invites or permits" others onto his or her property. Section 4 extends the same immunity to the owner who *does* somehow invite or permit recreational activity. Unlike Section 3, however, it further provides that those owners who "invite or permit" recreation do not thereby assure the safety of their premises or confer "the legal status of an invitee or licensee" upon persons using their premises. The need for this further grant of immunity arises from the complexity of landowner liability in our common law. A landowner traditionally has greater responsibility to persons whom the owner invites or permits onto the land than to mere trespassers. The act makes sense as written only if we view Section 3 as a general grant of immunity and Section 4 as an extension of that immunity to cover the special circumstances long recognized in the case law. If we ignore the plain language of these provisions and hold that the Act as a whole applies only

to landowners who "invite or permit" others to recreate on the land, we will reduce Section 3 to mere surplusage. *Gallo,* 363 Pa. at 316, 526 A.2d at 363 (citations omitted).

It is understandable that the General Assembly saw fit, in section three, to grant immunity to owners of recreational land even if they did not invite the general public to use their land. The general grant of immunity contained in section three was a replacement for the Act of September 27, 1961, P.L. 1696, which was repealed by the Recreation Use of Land and Water Act, 68 P.S. § 477–8. The previous act had provided: "No landowner of agricultural lands or woodlands shall be liable for the payment of damages for any personal injury suffered by any person while hunting or fishing upon the landowner's property, except for any deliberate and wilful personal injury inflicted upon such person by such landowner." The General Assembly enacting the Recreation Use Act, which repealed the broad immunity then existing under P.L. 1696, apparently felt it necessary to replace it with the immunity granted in section three of the Recreation Use Act, even though such immunity was not in direct furtherance of the purpose stated in section one.

There is no principle of statutory construction which would permit us to ignore the plain language of section three. As the Superior Court noted in *Gallo, supra,* if section three is interpreted to apply only to landowners who invite the public to recreate upon their land, the section is a nullity—mere surplusage to the remainder of the statute. Several principles of statutory construction, codified in Title 1 of Pennsylvania Consolidated Statutes, prohibit us from rewriting "the pristine terms of the Recreation Act," as this Court characterized the language in *Commonwealth, Department of Environmental Resources v. Auresto,* 511 Pa. 73, 77, 511 A.2d 815, 817 (1986). "Words and phrases shall be construed according to rules of grammar and according to their common and approved usage." 1 Pa.C.S. § 1903(a). *"When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under*

*the pretext of pursuing its spirit."* 1 Pa.C.S. § 1921(b) (emphasis added). "Every statute shall be construed, if possible, to give effect to all its provisions." 1 Pa.C.S. § 1921(a).

Moreover, to interpret section three of the Recreation Use Act as requiring that a landowner invite the public to enter upon his land, in the guise of effectuating the purpose of "encourag[ing] owners of land to make land and water areas available to the public for recreational purposes," is to enter a thicket entangled with speculation as to the motives of the landowner in permitting the public to use his land. It would suggest that land which had been open for recreational purposes prior to 1966, when the Recreation Use Act was adopted, would fall outside the terms of the act because immunity could not encourage the owner to make his land available to the public for recreation inasmuch as he had already done so. *See, e.g., Livingston by Livingston v. Pennsylvania Power and Light Co.,* 609 F.Supp. 643 (E.D.Pa.1985); *Hahn v. United States,* 493 F.Supp. 57 (M.D.Pa.1980). These unnecessary difficulties in applying the statute would exist only if we were to interpret section three as if it required the landowner to invite the public upon his land, just as section four does, thereby equating section three with section four in violation of 1 Pa.C.S. § 1921(a), *supra.*

We find no authority in any sister state which has squarely addressed the precise question at hand. Several federal courts, however, have applied the statute as written and found no impediment to doing so, even though the immunity in section three *seems* inconsistent with the stated purpose of the act. A good example is the decision of the United States District Court for the Middle District of Pennsylvania, in *Barrett v. Pennsylvania Gas & Water Co.,* 631 F.Supp. 731 (M.D.Pa.1985), applying the Pennsylvania Recreation Use of Land and Water Act. That court stated:

The court's reading of §§ 477-3 and 477-4 is that an owner of land owes no duty of care to those who use the land for recreational purposes, and further, the landowner does not incur liability to one injured using his land

for recreational purposes by virtue of the fact that the person was directly or indirectly invited or permitted onto the land. Thus, the court views § 477–4 as a further extension of immunity, in other words, a catch-all provision. Were those circumstances in which the owner invited or permitted a person to use his land covered by § 477–3, there would be no need for § 477–4. While the purpose of the Act is to encourage landowners to open their land to others, the clear language of the statute provides that an owner of land, regardless of whether he holds open his land to others, owes no duty of care to keep the premises safe for entry or use by others for recreational purposes. § 477–3.

*Id.*, 631 F.Supp. at 734. *Accord Livingston by Livingston v. Pennsylvania Power and Light Co., supra; Hahn v. United States, supra.*

Accordingly, we hold that the pristine terms of section three of the Recreation Use Act immunize a landowner whose land is used for recreational purposes by the public without charge, whether or not he has invited or permitted the public to enter his land. Therefore, the judgment of the Superior Court, 381 Pa.Super. 662, 548 A.2d 644, must be affirmed.

Judgment affirmed.