William John LIVINGSTON, a minor, by his parents and natural guardians, William E. LIVINGSTON and Dorothy Livingston, and William E. Livingston and Dorothy Livingston in their own right

v.

**PENNSYLVANIA POWER AND LIGHT COMPANY, et al.**

Civ. A. No. 82–2590.

United States District Court, E.D. Pennsylvania.

May 3, 1985.

James E. Beasley, Philadelphia, Pa., for plaintiff.

T.R. Cunningham, Joseph H. Foster, Philadelphia, Pa., for Pennsylvania Power & Light Co.

LeRoy S. Zimmerman, Atty. Gen., Com. of Pa., Harrisburg, Pa., for all Pa. Depts.

## MEMORANDUM AND ORDER

TROUTMAN, Senior District Judge.

Between 1924 and 1926 Pennsylvania Power & Light Company (PP & L) constructed Lake Wallenpaupack on the border of Wayne and Pike Counties in the Commonwealth of Pennsylvania. The lake was created by damming the Wallenpaupack Creek, thereby flooding land which PP & L had acquired specifically for the purpose of generating hydroelectric power. However, its attraction as a resort area, which is actively promoted by PP & L, has largely supplanted that function in recent years. PP & L's Federal Power Commission (FPC) license [1] specified various conditions in connection with the creation and maintenance of the Wallenpaupack Project Area, including a requirement that some of the land be dedicated to the public. Accordingly, PP & L maintains four recreational areas on land it has retained near the lake. PP & L also kept and maintained a "ribbon" of land around the lake, thus requiring abutting landowners to seek easements across the "ribbon" to gain access to the lake itself. PP & L grants easements in exchange for one-time $15.00 fees, PP & L also grants licenses for placing docks on the lake.

During the summer of 1980, William Livingston, fifteen years of age, plaintiff in

---

**1.** The Federal Energy Regulatory Commission is the presently existing successor agency to the FPC.

this action, traveled by boat from the Tanglewood resort area to a rock near PP & L's Ledgedale Recreation Area. William's family owns a home in Tanglewood and docks its boat nearby. William drove the family boat to the rock, accompanied by his grandmother and two younger brothers. In the course of playing on and near the rock, William dove from it, struck something beneath the water and was rendered a quadriplegic. William and his parents subsequently brought this action against PP & L seeking damages for his injuries.

In its motion for summary judgment, the defendant has raised two legal theories, either of which, it contends, renders it immune from liability. If correct, defendant is entitled to summary judgment notwithstanding disputed factual issues in connection with the details of the accident.

PP & L first contends that Pennsylvania's Recreation Use of Land and Water Act, 68 Pa.Cons.Stat.Ann. § 477–1 to 477–8 applies. Under that Act, landowners who make their premises available to the public free of charge for recreational purposes are under no duty to keep the premises safe or to warn of dangerous conditions, uses, structures of activities thereon. Similarly, the owner extends no assurance that the premises are safe, assumes no duty of care toward recreational users, and incurs no liability for negligent injury to such users. This statutory immunity does not apply if the owner levies a charge upon persons who enter the land for recreational purposes. Similarly, the owner is not relieved of liability for willful or malicious failure to warn or guard against a dangerous condition, use, structure or activity.

Second, PP & L contends that it cannot be held liable for an accident which occurred in the waters of the lake or the lake bed because ownership thereof is vested in the Commonwealth by virtue of the navigability of Lake Wallenpaupack.

To establish that Lake Wallenpaupack is navigable in fact, PP & L describes its length, depth, acreage, the substantial number of annual visitors it attracts, and the commercial activities it supports. Relying upon the case of *Conneaut Lake Ice Company v. Quigley*, 225 Pa. 65, 74 A. 648 (1909), defendant contends that its description of the lake supports the conclusion that the lake is navigable in fact and thus owned by the Commonwealth. In addition, PP & L buttresses its argument by noting that Wallenpaupack Creek had been legislatively declared a public highway in 1808. Presumably, by including this fact, PP & L is contending that the dammed portion of the Creek, now Lake Wallenpaupack, is *ipso facto* a public highway.

Although not cited by either party, the Court's research has revealed that the *Conneaut* case was explained fifty years later in *Lakeside Park Co. v. Fosmark*, 396 Pa. 389, 153 A.2d 486 (1959) which appears more applicable than *Conneaut*. The court in *Lakeside* first noted that the "... argument ... that the lake is susceptible of navigation in fact and hence that it is navigable in law ... is good law for rivers but must be accepted with caution for lakes", at 391, 153 A.2d 486. The court then elaborated on the concept of navigability:

> Navigation and navigability are portentuous words. They mean more than the flotation of buoyant vessels in water: if it were otherwise, any tarn capable of floating a canoe for which a charge could be made would make the water navigable. They mean more than some commercial use to which collected water is put: if this were not so, every spring-fed pool capable of being bottled and sold for drinking water would be navigable. No single factor can control. *Lakeside* at 394, 153 A.2d 486.

The Court went on to establish a frame of reference for a decision as to whether a particular body of water should be found navigable:

> We think that the concept of navigability should not be limited alone by lake or river, or by commercial use, or by the size of water or its capacity to float a boat. Rather it should depend upon whether water is used or usable as a broad high road for commerce and the

transport in quantity of goods and people, which is the rule naturally applicable to rivers and to large lakes, or whether with all of the mentioned factors counted in the water remains a local focus of attraction, which is the rule sensibly applicable to shallow streams and to small lakes and ponds. The basic difference is that between a trade-route and a point of interest. The first is a public use and the second private. *Id.* 396, 153 A.2d 486 The court concluded that the body of water before it, a 150-acre lake, "... falls far short of qualifying as a highway for commerce or a link of a chain within the reasonable intendment of that phrase. People came to stay and enjoy the lake as an end in itself, not as an incident in a journey along a trade route". *Id.* at 392, 153 A.2d 486.

■ Similarly, we conclude that if the Pennsylvania courts were to pass upon the navigability of Lake Wallenpaupack, they would follow *Lakeside* and find that it too is a point of interest, more suited to private than public use. The only reason for making a determination as to navigability in this case is to determine ownership of the lake waters and lake bed. Therefore, we hold that PP & L, not the Commonwealth, is the owner of Lake Wallenpaupack, and that summary judgment for the defendant cannot be based upon its lack of ownership of the accident scene.

■ Nor are we persuaded by PP & L's argument that the Fish and Boat Code, 30 Pa.Cons.Stat.Ann. § 101, *et seq.*, which empowers the Commonwealth to patrol the lake and enforce state boating and fishing regulations, as well as all state laws, shows that control of the lake was effectively vested in the state. That act is applicable to all waters in the state, including private fishing ponds. It speaks to the state's ability to enforce its laws and regulate all waters within its boundaries, not to ownership or control thereof.[2]

Having determined the ownership of the lake itself and there being no dispute as to the ownership of the land immediately adjacent to the lake, there are only two issues remaining with respect to the Recreation Use of Land and Water Act. First, does the fact that PP & L admittedly obtained easement fees from abutting landowners and continues to collect license fees from anyone wishing to construct a dock or similar structure upon the land retained by PP & L constitute a "charge" within the meaning of the Act, thus rendering it inapplicable to PP & L? Second, did PP & L willfully or maliciously fail to guard or warn against a dangerous use or condition, *i.e.*, diving from a rock in the waters of the lake?

Unfortunately, as both parties to this litigation recognize, there is little appellate authority in Pennsylvania to guide this Court in interpreting the Act. Defendant, consequently, urges us to look to other states for guidance. The plaintiff urges a narrow interpretation and application of the Act which confers immunity and is a departure from usual common law standards of liability.

In discharging our duties as a Court sitting in diversity, we are bound to apply the law of the forum state, and where necessary, to predict its course. Consequently, we will seek guidance from existing Pennsylvania judicial decisions and Pennsylvania's rules of statutory construction. In that regard, we look first to that portion of the Pennsylvania statutes dealing with statutory construction. Here we are admonished that, "words and phrases shall be construed according to rules of grammar and according to their common and ap-

**2.** Soon after the case was filed, PP & L joined the Commonwealth and certain of its officials as third-party defendants. By order and footnote of December 17, 1982, this Court granted the Commonwealth's motion to dismiss the case against it and the officers in their official capacities on Eleventh Amendment grounds, but allowed the officials to remain in the case pending discovery to determine whether or not they may be held liable in their individual capacities. On September 24, 1984, those officers again moved for dismissal on the grounds that discovery had not revealed any personal involvement on their part. Unopposed, the motion was granted at oral argument on the instant motion.

proved usage"; 1 Pa.Cons.Stat.Ann. § 1903(a); "When the words of a statute are clear and free from all ambiguity, the latter is not to be disregarded under the pretext of pursuing its spirit", 1 Pa.Cons. Stat.Ann. § 1921(b); "The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible to give effect to all its provisions". § 1921(a) and, finally, "The rule that statutes in derogation of the common law are to be strictly construed, shall have no application to the statutes of this Commonwealth enacted finally after September 1, 1937", § 1928(a).

The foregoing principles, no less the law of Pennsylvania than the statute itself, combined with prior judicial construction, will guide our decision as to the application of the Act.

■ The purpose of the Legislature in enacting the statute was "... to encourage owners of land to make land and water areas available to the public for recreational purposes by limiting their liability toward persons entering thereon for such purposes", 68 Pa.Cons.Stat.Ann. § 477–1. Plaintiff first argues that the Act should not apply to defendant in this case because the Lake Wallenpaupack area was open to the public long before the Act was passed in 1966. Thus, the intent of the Legislature would not be effectuated by extending the immunity conferred by the Act to PP & L. However, § 477–4 does not so limit the Recreation Act's application. It reads as follows:

Except as specifically recognized by or provided in section 6 of this act, an owner of land who either directly or indirectly invites or permits without charge any person to use such property for recreational purposes does not thereby:

(1) Extend any assurance that the premises are safe for any purpose.

(2) Confer upon such person the legal status of invitee or licensee to whom a duty of care is owed.

(3) Assume any responsibility for or incur liability for any injury to persons or property caused by an act or omission of such persons.

Moreover, those few Pennsylvania courts which have considered the Act have applied it literally to owners upon whose land a recreational user was injured, whether or not such landowner was induced to make it available because of the Act. In *Wiegand v. Mars National Bank*, 308 Pa.Super. 218, 454 A.2d 99 (1982), the court noted that a bank allowing children to use its vacant lot as a baseball field was protected by the Act. In *Smith v. Mosier*, 29 D & C 3d 660 (1984), there was evidence that the landowner took affirmative steps to prevent people from using his land for recreational purposes, but he nonetheless sought the protection of the Act when sued by an injured swimmer. The court held that the Act applied notwithstanding the defendant's active attempts to make his land unavailable to the public. Likewise, a federal court sitting in Pennsylvania was unmoved by plaintiff's argument that because the United States is bound to hold certain lands open to the public, it could not have done so in response to the Recreation Act and so the immunity conferred by the Act should not apply to the Government. *Hahn v. United States*, 493 F.Supp. 57 (M.D.Pa. 1980). Similarly, we will not here limit the Act's application to the defendant merely because Lake Wallenpaupack was open to the public before the Act was passed.

■ Plaintiff's next argument is that easement fees or license fees paid by the Tanglewood Association, to which plaintiff belonged and where plaintiff owns a house and has access to a Marina where plaintiff's boat was docked, constitutes a charge for going upon the land, one of the exceptions found in § 477–6 of the Act. Defendant contends that the "charges" it levied were not of the kind contemplated by the Act, were not directly paid by the plaintiff and were, in any event, *de minimis*. None of the Pennsylvania cases construing the Act which were brought to the Court's attention by counsel or which we were otherwise able to find speaks directly to this issue as it is presented here. In *Hahn*,

*supra,* the district court held that tax monies paid by the plaintiff were not such a direct charge as to remove the immunity afforded by the Act. The identical issue with respect to the Commonwealth of Pennsylvania was presented to the Court of Common Pleas of Centre County in a suit arising from the same incident. *Hahn v. Commonwealth,* 18 D & C 3d 260 (1980). There, however, the court declined to consider it because it had been raised by the plaintiff in a procedurally improper manner, but in a footnote detailing the nature of the impropriety, the court noted that the argument would have been unavailing in any event because the Act defines "charge" as " 'the admission price or fee *asked in return for invitation or permission to enter or go upon the land* ' " (Emphasis in 18 D & C 3d at 265). The court noted that such language contemplates a " 'quid pro quo', i.e., a charge in exchange for permission to enter *that land at that time".* (*Id.* Emphasis in original).

Such interpretation conforms to the plain language of the Act if its words are construed "according to their common and approved usage". *See,* 1 Pa.Cons.Stat.Ann. § 1903(a). If accepted by this Court, it is obvious that those fees which plaintiff contends constitute a "charge" within the meaning of the Act cannot logically be considered such a "quid pro quo". First, the easement fees or license fees were paid only indirectly by the plaintiff and, secondly, the payments were far removed in time from the accident. Finally, abrogating PP & L's statutory immunity on that basis would render uniform enforcement of the Act impossible. The availability of the Recreation Act as a defense would depend upon the unpredictable circumstances of potential accidents. For example, if the injured plaintiff in this case had traveled from his home to the Ledgedale Recreation Area, entered the water there without using the picnic tables or launching a boat, it is obvious that no charge would have been paid by him, even indirectly. The only way to avoid inconsistent application of the Act dependent upon fortuitous circumstances is to interpret the word "charge" as suggested in *Hahn v. Commonwealth, supra, i.e.,* as an actual admission price paid for permission to enter the land at the time of its use for recreational purposes.

■ Having held that PP & L is an owner within the meaning of the Recreation Act who holds its land open to the public without charge, the only remaining issue is whether or not there was a "... wilful or malicious failure to guard or warn against a dangerous condition, use, structure or activity", 68 Pa.Cons.Stat.Ann. § 477–6(1). That section must be read in conjunction with § 477–3, removing liability for failure to warn or to keep the premises safe. Wilfulness or malice are, therefore, necessary elements of a failure to guard or warn so as to remove the Act as a bar to recovery. No argument has been advanced by plaintiff that defendant had the requisite intent to injure implied by the word "malice". Consequently, the inquiry turns on whether there was a willful failure to guard or warn.

It is clear that PP & L provided no swimming facilities in any of the four recreation areas it maintained. There was one beach maintained by a nearby municipality on land leased from PP & L, which was the only patrolled public swimming facility. Sherwood Krum, employed by PP & L as Lake Superintendent at Wallenpaupack testified in his deposition that although PP & L has a no-swimming policy in its recreation areas, it was neither publicized nor enforced. He also testified that he had seen people swimming and diving in the vicinity of Ledgedale, Plaintiff contends that PP & L's policy, its non-enforcement thereof and its knowledge that it was regularly violated imposes a duty to make safe or warn of dangerous conditions of which it must have known, *e.g.,* the danger of diving in a rocky area. Plaintiff also argues that since PP & L is responsible for regulating the water level of the lake, it had an even greater duty to control swimming and diving, presumably because fluctuating water levels may affect the dangerousness of such activities.

Defendant's conduct with respect to swimming and diving, however, falls within the language of § 477-3 of the Act which relieves landowners of any duty to discover, make safe or warn of dangerous activities or conditions on the premises open to the public for recreational purposes. Knowledge that certain activities are occurring or that certain conditions exist cannot impute knowledge of specific dangers inherent in those conditions or activities to a landowner. *See, Smith v. Mosier,* 29 D & C 3d 660 (1984).

The Pennsylvania Supreme Court has indicated that willful conduct in this context consists of a failure to disclose "dangerous conditions known to it (the possessor of the premises) and *not likely to be discovered*". *Kopp v. R.S. Noonan, Inc.,* 385 Pa. 460, 463, 123 A.2d 429 (1956). (Emphasis added). This formulation of the law is the basis for the court's conclusion in *Hahn v. Commonwealth, supra,* that the Recreation Act had the effect of limiting a landowner's specific duty to persons entering his land for recreational purposes to *that* duty owed to a gratuitous licensee at common law. Thus, willfulness under § 477-6 contains two elements: (1) actual knowledge of a danger (2) that is not obvious to those entering the premises.

Here the record establishes, at the most, that PP & L suspected that swimming and diving in the lake may be dangerous, and for that reason did not encourage those activities. Under the Act it has no duty to take more affirmative action unless such dangers are not obvious. It is obvious, especially to an experienced swimmer and diver, that swimming and diving in an unfamiliar and rocky area is dangerous. Moreover, plaintiff William Livingston's deposition reveals that he knew the water level of the lake on the day of the accident, and that the depth of the water near the rock varied because he had swum around the rock and investigated the depth of the water before diving from the rock. He also knew that the area was rocky and the water dirty, making it difficult to see, *e.g.,* whether or not there may have been a log submerged in the vicinity of the rock. (Plaintiff's deposition, pp. 58–69). Livingston also testified that he swam to the rock before taking his younger brothers there specifically to check for dangerous conditions. Although he did not see anything he considered dangerous, he also did not check every point around the rock. (Plaintiff's deposition, p. 79). Under these circumstances, it cannot be said that a dangerous condition existed, whether or not known to PP & L, which was unlikely to be discovered.

Accordingly, we conclude that summary judgment must be granted in favor of the defendant, PP & L, since it is a landowner holding its premises open to the public within the meaning of the Recreation Use of Land and Water Act and to which none of the exceptions of the Act applies.