**Carl CAPRIOTTI, Jr., Plaintiff,**

v.

**Leonard BUNNELL and Ethel Bunnell, husband and wife, and Robert Bunnell, Defendants.**

**No. 87–0859 Civil.**

United States District Court, M.D. Pennsylvania.

Feb. 24, 1988.

Thomas F. Crawford, Law Offices of Robert M. Fellheimer, Doylestown, Pa., for plaintiff.

Eugene D. Sperazza, Thomas B. Helbig, Joseph A. Quinn, Jr., Hourigan, Kluger, Spohrer & Quinn, P.C., Wilkes–Barre, Pa., for defendants.

## MEMORANDUM AND ORDER

NEALON, Chief Judge.

This case arises out of an incident wherein plaintiff dove into defendants' pond and struck his head on a rock. Presently before the court is defendants' motion for summary judgment. For the reasons set forth below, the motion will be denied.

## BACKGROUND

The parties are in substantial agreement over a number of underlying facts. Defendants Leonard and Ethel Bunnell, husband and wife, have since 1963 owned in fee simple a tract of land of approximately forty-two (42) acres which is located adjacent to Route 29 in Bridgewater Township, Susquehanna County, Pennsylvania. The land is largely unimproved and lies in a rural setting. The Bunnells originally used the land as a grazing pasture for horses and cattle, but the Bunnells no longer raise any animals on the land and currently utilize only about three (3) acres of the tract for farming purposes. No one lives on the property. The Bunnells reside approximately one mile away in Montrose, Pennsylvania.

In 1966, the Bunnells hired a contractor to build a one-and-a-half (1½) acre pond on their property in Bridgewater Township. A dam was also constructed at the southwest edge of the man-made pond, and water from the pond spills over the dam whenever the pond reaches a certain maximum depth. When the pond was being constructed, the contractor was unable to move a large rock from the site of the planned pond, and the rock now occupies an area in the pond near the east edge of the water. At least initially, the top of the rock protruded above the water level and was visible from the surrounding shore, and the Bunnells and their son, defendant Robert Bunnell, were at all relevant times aware of the existence and location of the rock.[1] The pond is occasionally used for

---

1. Plaintiff maintains that "when the pond was built, the water level was lower than it currently is, and the rock was visible" but that "in recent years, the water level in the pond has risen and covered the rock." *See* plaintiff's statement of material facts at ¶¶ 4–5. Plaintiff has not presented any evidence to the court in support of his contention that the depth of the pond rose over a course of years.

The only evidence in the present record concerning the water level in the pond in relation to the top of the rock is the deposition testimony of each of the three defendants and of the plaintiff, who swam in the pond, at most, on two separate occasions and who claims that he never saw the rock. Each defendant testified that he/she never saw the rock covered by water. *See* Leonard Bunnell dep. tr. at 8; Robert Bunnell dep. tr. at 21; Ethel Bunnell dep. tr. at 17. Of course, the important question in this case is whether the rock was covered by water on the date of plaintiff's accident, June 23, 1985, and neither Leonard nor Ethel Bunnell was near the pond on that date. Robert Bunnell also testified that when the pond reaches its maximum depth and water spills over the dam,

swimming and fishing by acquaintances of the Bunnells and by neighborhood children. The Bunnells have never charged a fee for the right to enter upon or utilize the premises.

On June 23, 1985, Robert Bunnell invited a group of his friends to the Bridgewater Township property for a picnic/swimming party. Present at the picnic were Robert Bunnell, plaintiff Carl Capriotti, Joe Mulcarowitz, Tina Sherick and Cheryl Eckenrod. This group, with the possible exception of Cheryl Eckenrod, arrived at the pond between 11 a.m. and noon.[2] No fee was charged for attending the party or for using the land or pond.

At this point, Robert Bunnell's recollection begins to differ dramatically from Carl Capriotti's version of events. Bunnell testified during his deposition that he, Capriotti and Mulcarowitz swam intermittently during the afternoon prior to 4:30 p.m. when Capriotti left temporarily to pick up Cheryl Eckenrod from her place of employment in order to bring her to the picnic (dep. tr. at 13). Bunnell stated that on the day of the picnic, the top of the rock in the pond protruded an inch-and-a-half to two inches above the water level and was plainly visible (dep. tr. at 21). Further, Bunnell maintained that he cautioned Capriotti and the others about the presence of the rock at least three times throughout the afternoon and that Capriotti acknowledged his warnings on at least one occasion (dep. tr. at 19–21 and 46–50).

In contrast, Capriotti testified in his deposition that he did not enter the water until approximately 5:00 p.m., at which time the accident in question occurred (dep. tr. at 27). He also indicated that he never left the pond area following his arrival there at midday and that Cheryl Eckenrod had accompanied him from the outset of the picnic (dep. tr. at 23–24, 27). Moreover, he asserted that prior to diving into the pond he visually inspected the water surface, and according to Capriotti, the rock did not protrude above the water surface and was not visible (dep. tr. at 26, 32). Capriotti was not asked during his deposition whether he had any reason to suspect, because of warnings from Robert Bunnell or otherwise, the existence and location of the rock, but the clear inference from his deposition testimony is that he would deny any knowledge of the rock prior to the time he dove into the pond.[3]

It is undisputed from the deposition testimony of Robert Bunnell and Carl Capriotti that between 5:00 p.m. and 5:30 p.m. on June 23, 1985, Capriotti dove into the pond and injured his head, presumably on the above-described rock. He suffered contusions and abrasions and was taken to a nearby hospital. No deposition testimony or affidavits from any of the other individuals at the picnic has been submitted to the court.

Plaintiff commenced this action on June 19, 1987, alleging that defendants were negligent by, *inter alia*, failing to warn of or alleviate a dangerous condition. Plaintiff claims that as a result of his head injury, he experienced a concussion and seizures and continues to periodically experience headaches, numbness in his head and pain in his ears, eyes and neck.

the rock still protrudes above the surface of the pond, yet Robert Bunnell also stated that he could not remember any time when the pond actually rose to such a depth that its water flowed over the dam. *See* Robert Bunnell dep. tr. at 55–56, 62–63.

2. Carl Capriotti testified in his deposition that two children of Tina Sherick also attended the picnic. Robert Bunnell could not remember whether any children were present. As noted later in this Memorandum, Robert Bunnell maintained that Capriotti left around 4:30 p.m. to pick up Cheryl Eckenrod from her place of employment and bring her to the picnic, while Capriotti asserted that Eckenrod accompanied him to the picnic when he first arrived in the early afternoon.

3. The deposition testimony of Robert Bunnell and Carl Capriotti differs in one other respect. Bunnell claimed that Capriotti had never accompanied him to the pond prior to June 23, 1985 (dep. tr. at 6). Capriotti testified that he swam in the pond with Bunnell on July 4, 1984 (dep. Tr. at 13–15 and 24–25). According to Capriotti, he did not swim near the area of the pond where the rock is located or see the rock protruding from the surface of the water on the earlier date.

Defendants moved for summary judgment on December 31, 1987, arguing that they are entitled to judgment as a matter of law under the Recreational Use of Land and Water Act, 68 P.S. § 477-1 *et seq.* Defendants filed their supporting brief on January 7, 1988. They also submitted transcripts of the deposition testimony of plaintiff and of each of the three defendants, with accompanying exhibits attached thereto. Plaintiff filed a response and a brief in opposition on February 12, 1988.

No further documents have been forwarded to the court, and defendants' motion for summary judgment is now ripe for disposition.

## DISCUSSION

When faced with a summary judgment motion, a district court must determine whether "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" only if the evidence is such that a reasonable jury could find for the party opposing the motion. *Equimark Commercial Finance Co. v. C.I.T. Financial Services Corp.*, 812 F.2d 141, 144 (3d Cir.1987) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). The court must view all facts in the light most favorable to the party opposing the motion. *Betz Laboratories, Inc. v. Hines*, 647 F.2d 402, 404 (3d Cir. 1981).

The substantive law of Pennsylvania applies to this diversity case. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The Recreational Use of Land and Water Act was passed by the Pennsylvania legislature in 1966 "to encourage owners of land to make land and water areas available to the public for recreational purposes by limiting their liability toward persons entering thereon for such purposes." 68 P.S. § 477-1. The Act limits traditional landowner liability as follows:

Except as specifically recognized or provided in section 6 of this act, an owner of land owes no duty of care to keep the premises safe for entry or use by others for recreational purposes, or to give any warning of a dangerous condition, use, structure, or activity on such premises to persons entering for such purposes.

68 P.S. § 477-3. The Act sets forth a slightly different formulation of the immunity standard for landowners who by some means invite or permit recreational activity on their land:

Except as specifically recognized by or provided in section 6 of this act, an owner of land who either directly or indirectly invites or permits without charge any person to use such property for recreational purposes does not thereby:

(1) Extend any assurance that the premises are safe for any purpose.

(2) Confer upon such person the legal status of an invitee or licensee to whom a duty of care is owed.

(3) Assume responsibility for or incur liability for any injury to persons or property caused by an act of omission of such persons.

68 P.S. § 477-4. However, the immunity provided by the Act is not absolute. Section 477-6(1) preserves landowner liability for "wilful or malicious failure to guard or warn against a dangerous condition, use, structure, or activity," and section 477-6(2) retains the traditional negligence-based standard of care for those instances wherein a landowner has charged the plaintiff an admission fee for using the land. Moreover, the Pennsylvania Supreme Court has cautioned that the Act should be construed narrowly inasmuch as grants of immunity from suit are "out of harmony, generally, with the modern trend in tort law." *Rivera v. Philadelphia Theological Seminary*, 510 Pa. 1, 12, 507 A.2d 1, 7 (1986). Finally, since the Act is designed to encourage the opening up of large, private land holdings for outdoor recreational use by the general public, enclosed recreational facilities in urban areas are not covered by this legislation. *Id.* at 15, 507 A.2d at 8.

In summary, when the Recreational Use of Land and Water Act applies, a defendant landowner is entitled to immunity when the following three conditions are met:

(1) the injured plaintiff entered the land for "recreational purposes," 68 P.S. §§ 477–3 and 477–4;

(2) the landowner did not charge the plaintiff for the recreational use of the land, 68 P.S. § 477–6(2); and

(3) the landowner did not willfully or maliciously fail to warn or guard against a dangerous condition, use, structure or activity, 68 P.S. § 477–6(1).

See Gallo v. Yamaha Motor Corp., U.S.A., 363 Pa.Super. 308, 317, 526 A.2d 359, 364 (1987).

In the present case, the parties agree that the Recreational Use of Land and Water Act applies and that the first two conditions noted above are satisfied. See plaintiff's brief in opposition at 3. Further, there is no contention or evidence that the defendants acted maliciously. The issue for determination, then, is whether the court can conclude as a matter of law that the defendants did not act willfully. If the defendants acted willfully in failing to warn Carl Capriotti about the rock or in failing to guard against his injuries, they are not entitled to immunity under the Act, and conversely, if they did not act willfully, they should enjoy immunity.

Both plaintiff and the defendants cite the decision in Livingston v. Pa. Power & Light Co., 609 F.Supp. 643 (E.D.Pa.1985), aff'd mem., 782 F.2d 1029 (3d Cir.1986), for guidance in interpreting the term "wilful" in Section 6 of the Recreational Use of Land and Water Act. In Livingston, the district court held that the defendant utility was immune under the Act from suit to recover for injuries sustained by a fifteen-year-old diver who was rendered a quadriplegic as a result of diving onto a rock in the defendant's lake. Specifically, the court rejected the plaintiff's contention that the defendant utility, which admittedly did not enforce its ban on swimming in the area of the lake where the plaintiff was injured and which had knowledge that swimmers ventured there, acted willfully in failing to warn or guard against a dangerous condition or activity. The court noted, "Knowledge that certain activities are occurring or that certain conditions exist cannot impute knowledge of specific dangers inherent in those conditions or activities to a landowner." 609 F.Supp. at 649. The court then observed, "The Pennsylvania Supreme Court has indicated that willful conduct in this context consists of a failure to disclose 'dangerous conditions known to it (the possessor of the premises) and *not likely to be discovered*'" (emphasis in original) (quoting Kopp v. R.S. Noonan, Inc., 385 Pa. 460, 463, 123 A.2d 429 (1956)). 609 F.Supp. at 649. The court concluded, "Thus, willfulness under [68 P.S.] § 477–6 contains two elements: (1) actual knowledge of a danger (2) that is not obvious to those entering the premises." Id.

In applying the law to the facts before it, the Livingston court remarked:

Here the record establishes, at the most, that PP & L suspected that swimming and diving in the lake may be dangerous, and for that reason did not encourage those activities. Under the Act it has no duty to take more affirmative action unless such dangers are not obvious. It is obvious, especially to an experienced swimmer and diver, that swimming and diving in an unfamiliar and rocky area is dangerous. Moreover, plaintiff William Livingston's deposition reveals that he knew the water level of the lake on the day of the accident, and that the depth of the water near the rock varied because he had swum around the rock and investigated the depth of the water before diving from the rock. He also knew that the area was rocky and the water dirty, making it difficult to see, e.g., whether or not there may have been a log submerged in the vicinity of the rock. (Plaintiff's deposition, pp. 58–69). Livingston also testified that he swam to the rock before taking his younger brothers there specifically to check for dangerous conditions. Although he did not see anything he considered dangerous, he also did not check every point around the rock. (Plaintiff's deposition, p. 79). Un-

der these circumstances, it cannot be said that a dangerous condition existed, whether or not known to PP & L, which was unlikely to be discovered.[4]

609 F.Supp. at 649. Summary judgment was granted in favor of the defendant. *See also Rosa v. United States,* 613 F.Supp. 469 (M.D.Pa.1985) (Rambo, J.) (federal park attendant told eight-year-old child that she could not use her inner tube in a roped-off swimming area but that she could go outside the roped-off area in the inner tube, without informing the child that the water was deeper in the area to which she was directed; the child subsequently fell off the inner tube and drowned; after reviewing the definition of "willful" in various contexts, the court found that the United States' failure to guard or warn against an obvious danger was willful and that the United States could not, therefore, invoke the protection of Pennsylvania's Recreational Use of Land and Water Act); and *Davidow v. United States,* 583 F.Supp. 1170 (W.D.Pa.1984) (failure of federal park rangers to maintain a danger buoy forty (40) feet off a treacherous peninsula point during boating season was a willful failure to guard and warn against the danger at that location for purposes of Pennsylvania's Recreational Use of Land and Water Act). *Cf. Klepper v. City of Milford, Kansas,* 825 F.2d 1440 (10th Cir.1987) (interpreting the term "willful" in Kansas' recreational use statute).

In the present case, there is no dispute that the first prong of the test for willfulness set forth in *Livingston, i.e.,* actual knowledge of the danger on the part of defendants, is satisfied. In short, defendants admit that they were aware of the existence and location of the rock in question prior to June 23, 1985. *See, e.g.,* Leonard Bunnell dep. tr. at 14.

However, on the second prong of the *Livingston* test for willfulness, *i.e.,* obviousness of the danger to plaintiff, there is much disagreement. If the record conclusively demonstrated that the rock protruded above the surface of the pond on June 23, 1985 and should have been visible to Carl Capriotti before he dove or that Capriotti was adequately warned about the rock by Robert Bunnell prior to the accident, the court could rule as a matter of law that defendants did not act willfully and are immune from plaintiff's lawsuit under the Recreational Use of Land and Water Act. But the present record simply does not permit such a finding. Whereas Robert Bunnell testified that the rock protruded above the surface of the pond and was visible, Carl Capriotti stated that he visually inspected the surface of the pond before diving and did not see the rock. Whereas Robert Bunnell testified that he warned Capriotti about the existence and location of the rock several times and that plaintiff acknowledged at least some of these warnings, Capriotti stated that he was unaware of the presence of the rock prior to his accident.[5] The differing versions of events on the afternoon of June 23, 1985 from these two men are irreconcilable. The court reiterates that it has not received any deposition testimony or affidavits from any of the other individuals who attended the picnic.

There are, then, material fact disputes in the present case. Viewing the record in the light most favorable to plaintiff for summary judgment purposes, the court is unable to conclude as a matter of law that defendants did not act willfully or that they are entitled to immunity under the Recreational Use of Land and Water Act. Conse-

**4.** The factual background in *Livingston* differs from the factual record in this case in key respects. For example, in the present case, the record contains no clear proof that the area of the pond into which Carl Capriotti dove could be fairly characterized as a "rocky area." Other than the rock previously described, the record mentions only one other rock in the pond. All indications are that the latter rock was submerged at all relevant times. Moreover, whereas the plaintiff in *Livingston* dove from a large

rock, Capriotti denied any knowledge of the presence of any rocks prior to the time he dove into the pond on June 23, 1985.

**5.** In addition, while the three defendants testified that they have never seen the rock covered by water, Capriotti stated that the rock was not visible when he and Robert Bunnell swam in the pond in July 1984, approximately one year before plaintiff was injured.

quently, defendants' motion for summary judgment will be denied.

An appropriate Order will enter.