**Stine v. Nagle Corp.**

*Jack E. Feinberg,* for plaintiffs Fenton D. Stine, Joseph J. Bluis and Mary A. Meza.

*Francis T. McDevitt,* for plaintiff Donald C. Snyder.

*Oscar S. Schermer,* for plaintiff Harold Bitting.

*David M. Kozloff,* for defendants Nagle Corp., Selkirk Mining Co. and Gordon Land Co.

*Robert I. Cottom,* for defendants Richard Ryon, Ryon Realty Co. Inc. and Richard Ryon Agency.

*Jessie L. Smith,* for the Commonwealth of Pennsylvania, Department of Environmental Resources.

*James K. Thomas II,* for defendant Donald C. Snyder Jr.

McCLOSKEY, *P.J.,* May 17, 1990 — On April 30, 1984, the bodies of Thomas Frew, Connie Bluis, Mark Bluis, Sheryl Bluis, Steven Meza and Patrice Yohey were discovered at the bottom of a coal hole which opened into an abandoned mine shaft on land of defendant Nagle Corporation. The decedents were occupants of the four-wheel-drive 1972 Chevrolet Blazer of decedent Thomas Frew. Six years have passed since suits were commenced by the various plaintiffs-administrators of the respective decedents' estates against the various defendants.

The defendants Selkirk Mining Company of Pottsville, Selkirk Mining Company, Nagle Corporation, Gordon Land Corporation, Richard B. Ryon, Ryon Realty Co. Inc. and Richard Ryon Agency have filed motions for summary judgment. Extensive discovery has been made. Depositions, interrogatories, affidavits and other documents have been filed of record. No evidence was offered as to liability of defendants Selkirk Mining Company of Pottsville, Selkirk Mining Company, Gordon Land

Corporation, Richard B. Ryon, Ryon Realty Co. Inc. and Richard Ryon Agency. Briefs have been filed and oral argument heard. At oral argument, David M. Kozloff, Esq. and Ronald E. Cirba, Esq. appeared on behalf of defendant, Nagle Corporation; Bobbie Ann Thornburg, Esq. appeared on behalf of the plaintiffs-administrators of the estates of Connie Bluis, Mark Bluis, Sheryl Bluis and Steven Meza. Oscar S. Schermer, Esq., counsel for the plaintiff-administrator of the estate of Patrice Yohey, and Francis T. McDevitt, Esq., counsel for the plaintiff-administrator of the estate of Thomas Frew, did not appear but by correspondence gave notice of their requests to join in the oral argument of attorney Thornburg.

Sharp Mountain is wilderness land riddled with active and abandoned coal-mining operations. Generations have used Sharp Mountain for hiking, camping, picnicking, and now also for biking, snowmobile riding, and operating off-the-road vehicles. Plaintiffs' decedents were last seen on the evening of April 28, 1984. The decedents were known to have enjoyed camping and "four-wheeling" on the Sharp Mountain.

The Pennsylvania Recreation Use of Land and Water Act (February 2, 1966, P.L. 1860, §§1-8; 68 P.S. §§477-1 through 477-8) provides as follows:

"§477-1. *Purpose, liability*

"The purpose of this act is to encourage owners of land to make land and water areas available to the public for recreational purposes by limiting their liability toward persons entering thereon for such purposes.

"§477-2. *Definitions*

"As used in this act:

"(1) 'Land' means land, roads, water, watercourses, private ways and buildings, structures and

machinery or equipment when attached to the realty.

"(2) 'Owner' means the possessor of a fee interest, a tenant, lessee, occupant or person in control of the premises:

"(3) 'Recreational purpose' includes, but is not limited to, any of the following, or any combination thereof: hunting, fishing, swimming, boating, camping, picnicking, hiking, pleasure driving, nature study, water skiing, water sports and viewing or enjoying historical, archaeological, scenic, or scientific sites.

"(4) 'Charge' means the admission price or fee asked in return for invitation or permission to enter or go upon the land.

"§477-3. *Duty to keep premises safe; warning*

"Except as specifically recognized or provided in section 6 of this act, an owner of land owes no duty of care to keep the premises safe for entry or use by others for recreational purposes, or to give any warning of a dangerous condition, use, structure, or activity on such premises to persons entering for such purposes.

"§477-4. *Assurance of safe premises; duty of care; responsibility, liability*

"Except as specifically recognized by or provided in section 6 of this act, an owner of land who either directly or indirectly invites or permits without charge any person to use such property for recreational purposes does not thereby:

"(1) Extend any assurance that the premises are safe for any purpose.

"(2) Confer upon such person the legal status of an invitee or licensee to whom a duty of care is owed.

"(3) Assume responsibility for or incur liability for any injury to persons or property caused by an act of omission of such persons.

"§477-5. *Land leased to state or subdivision*

"Unless otherwise agreed in writing, the provisions of sections 3 and 4 of this act shall be deemed applicable to the duties and liability of an owner of land leased to the state or any subdivision thereof for recreational purposes.

"§477-6. *Liability not limited*

"Nothing in this act limits in any way any liability which otherwise exists:

"(1) For willful or malicious failure to guard or warn against a dangerous condition, use, structure, or activity.

"(2) For injury suffered in any case where the owner of land charges the person or persons who enter or go on the land for the recreational use thereof, except that in the case of land leased to the state or a subdivision thereof, any consideration received by the owner for such lease shall not be deemed a charge within the meaning of this section.

"§477-7. *Construction of act*

"Nothing in this act shall be construed to:

"(1) Create a duty of care or ground of liability for injury to persons or property.

"(2) Relieve any person using the land of another for recreational purposes from any obligation which he may have in the absence of this act to exercise care in his use of such land and in his activities thereon, or from the legal consequences of failure to employ such care.

"§477-8. *Repealer*

"The Act of September 27, 1961 (P.L. 1696), entitled [section 1629 of Title 12], is repealed.

"All other acts or parts of acts are repealed in so far as inconsistent herewith."

The situs of the incident sub judice was open woodland. The public in general, and plaintiffs' decedents in particular, made use of defendant's land for the recreational purpose of pleasure driving. Defendant knew of this use by the public. Defendant made no charge to the public or to plaintiffs' decedents for this recreational use of the land. Defendant gave no warning to plaintiffs' decedents of the alleged dangerous condition on its land. Defendant denies knowledge of the alleged dangerous condition of the situs prior to the incident.

Although others knew of the dangerous condition of the situs, plaintiffs' counsel point to no evidence that defendant knew of this danger. Plaintiffs' counsel contend that defendant had a duty to inspect its land of some several hundred acres of mostly mountain woodland and to protect the public from any dangerous condition discovered on its land.

Plaintiffs' counsel cites *Rosa v. United States,* 613 F. Supp. 469 (D.C. Pa. 1985) in support of their contention that defendant's failure to warn plaintiffs' decedents, constitutes a willful failure to warn. However, *Rosa* defines "willful" at 476:

"[T]hree elements: (1) foreseeability of the danger; (2) defendants' knowledge of the danger; and (3) the actions taken by the defendant in light of the first two factors."

Plaintiffs' counsel point to no evidence that defendant should have foreseen the danger or that defendant knew of the danger. Thus, the lack of action by defendant cannot constitute willful negligence.

Defendant's knowledge that the public used defendant's land for the recreational purpose of plea-

sure driving and that an abandoned mine shaft existed on its land, does not impute to defendant the knowledge that plaintiffs' decedents would plummet 70 feet into an unknown opening of the abandoned mine shaft. *Capriotti v. Bunnell,* 685 F.Supp. 462, 466 (M.D. Pa. 1988).

Moreover:

"No argument has been advanced by plaintiff that defendant had the requisite intent to injure implied by the word 'malice.' Consequently, the inquiry turns on whether there was a willful failure to guard or warn." *Livingston by Livingston v. Pa. Power & Light Co.,* 609 F.Supp. 643, 648 (D.C. Pa. 1985).

Although the facts must be viewed in a light most favorable to plaintiffs, "An issue is 'genuine' only if the evidence is such that a reasonable jury could find for the party opposing the motion." *Capriotti v. Bunnell,* 685 F.Supp. 462, 465 (M.D. Pa. 1988). Plaintiffs' counsel point to no evidence of record that defendant knew or should have known of the danger which led to the deaths of plaintiffs' decedents.

Plaintiffs contend that Sharp Mountain is so inherently dangerous that it is unfit for recreational use; thus, the Pennsylvania Recreation Use of Land and Water Act should be inapplicable. This court cannot agree:

"[A]n owner who directly or indirectly invites or permits a person to use the property for recreational purposes does not extend any assurance that the premises are safe. . ." *Barrett v. Pennsylvania Gas & Water Co.,* 631 F.Supp. 731, 734 (M.D. Pa. 1985).

Neither the act nor any judicial authority supports plaintiffs' contention. Summary judgment must be entered in favor of defendants.

## ORDER

And now, May 17, 1990, at 12:25 p.m., upon review of the pleadings, depositions, affidavits, interrogatories and other record papers, and upon consideration of the briefs of counsel and after argument, it is hereby ordered that the motions for summary judgment of the defendants, Nagle Corporation, Selkirk Mining Company of Pottsville, Selkirk Mining Company, Gordon Land Corporation, Richard B. Ryon, Ryon Realty Co. Inc., and Richard Ryon Agency, are granted.