408 A.2d 856

**Charles W. HAGER, IV**

v.

**Emlen ETTING and Gloria Etting, his wife, and Chez Odette, Inc. and Bucks County Bank and Trust Company, Guardian for Odette Myrtil, an Incompetent.**

**APPEAL of CHEZ ODETTE, INC. and Bucks County Bank and Trust Company, Guardian for Odette Myrtil, an Incompetent.**

Superior Court of Pennsylvania.

Argued March 21, 1979.

Filed Aug. 10, 1979.

Daniel T. McWilliams, Philadelphia, for appellants.

Herbert F. Kolsby, Philadelphia, for appellee Charles W. Hager, IV.

John J. Tinaglia, Philadelphia, did not file a brief on behalf of appellees Etting.

Before VAN der VOORT, HESTER and MONTGOMERY, JJ.

HESTER, Judge:

On August 24, 1969, appellee, his wife and mother-in-law attended a party given by Odette Myrtil. Ms. Myrtil owned and operated a restaurant in Pennsylvania called "Chez

Odette, Inc." Ms. Myrtil was the President of the corporate defendant, Chez Odette, Inc. The party was an annual affair given by Ms. Myrtil for the employees and patrons of her restaurant. Appellee's wife and mother-in-law were employees at that time.[1] The party was held at a residence in Loveladies Harbor, New Jersey, which was owned by Emlen and Gloria Etting and leased to Ms. Myrtil.[2] The house was situate upon land which abutted a man-made canal. Around the bank of the canal a bulkhead and dock had been built, presumably to facilitate boating, fishing and swimming.

The party was an all day affair. Appellee, who had been swimming in a pool on the property, commenced to dive into the canal from the dock for the purpose of removing seaweed. Testimony adduced at trial was conflicting as to whether appellee had permission to swim in the canal and under what circumstances. In any event, on appellee's third dive he apparently struck the bottom of the canal and was seriously injured. He had to be removed from the water; and thereafter was taken to a nearby hospital where it was discovered that he was suffering from a traumatic transection of the spinal cord with a fracture at C–5 and C–6. This injury has reduced appellee to permanent quadraplegia.

Appellee, via complaint in trespass, sued for the injuries he sustained, naming as defendants, Emlen and Gloria Etting, owners of the land and Odette Myrtil and "Chez Odette, Inc.", as lessees in possession of the land. The complaint alleged that appellants were negligent in failing to warn appellee of the shallowness of the water, either by signs or orally, and in maintaining the dock as a swimming area without adequate supervision, in view of the dangers inherent in diving from such a platform.

Following trial by jury, a verdict in favor of the appellees was returned in the amount of 1.8 million dollars. Emlen and Gloria Etting had, prior to the verdict, obtained a

1. Appellee's wife was on a leave of absence.

2. The capacity in which Odette Myrtil leased this property is an issue to be discussed, infra.

joint-tortfeasors release for $300,000.00 (three hundred thousand dollars). Judgment was entered on the verdict in the amount of 1.2 million dollars.

Motion for judgment n. o. v. and a new trial were denied and this appeal followed.

Our review leads us to conclude that the trial court erred in its instruction to the jury on the issue of the legal status of appellee at the time of this occurrence.

The court's instruction on this point was as follows:

"Members of the jury, where a possessor of land invites persons to come on the land and offers the use of facilities, the duty is upon that possessor to exercise reasonable care to make sure the land is safe or at least to warn the invitee, which Mr. Hager was, of any dangers that he might not be able to recognize himself." (R. 817(a).)

█ The duty a possessor of land owes a person who comes upon his land (or land which he legally occupies) is determined by the status said person enjoys.

The injuries sustained herein occurred in the State of New Jersey. Since *Griffith v. United Air Lines*, 416 Pa. 1, 203 A.2d 796 (1964), Pennsylvania has adopted the principle that torts should be governed by the law of the state which has the greater interest in the application of its law, bearing in mind the policies and interests underlying the particular issue before the Court.

█ Here we see no conflict. The law of New Jersey should govern in determining the duty the possessor of the land in this case owed to appellee. We see no significant interest that the Commonwealth of Pennsylvania would further by having its law applied as to duties of possessors of land where the alleged tort occurred in New Jersey.

The legal status of the appellee was crucial. If he was an "invitee", then the possessor of land had a duty to exercise reasonable care to have the premises in a safe condition. That duty also included a duty to make a reasonable inspection to discover dangerous and defective conditions. *Benedict v. Podwats*, 109 N.J.Super. 402, 363 A.2d 486 (affirmed 57 N.J. 219, 271 A.2d 412 (1970)). If he was a "licensee", the

possessors of land still had a duty to exercise reasonable care to have the premises in a safe condition, but no duty to inspect. As to a licensee, the only duty was to *warn* of any known dangerous or defective condition. *Taneian v. Megrigian*, 15 N.J. 267, 104 A.2d 689 (1954).

■ The court here instructed the jury that appellee was an "invitee". We believe that was error. We think the facts were such that a determination of appellee's status should have been left to the jury.

In New Jersey a "social guest", even if a non-relative and specifically invited and urged to visit, is to be classified as a "licensee" and not an "invitee". *Benedict v. Podwats, supra.* An "invitee", is a word of art with special meaning in the law. Invitation to come upon the land, in the layman's sense of the word does not confer "invitee" status. This status is conferred upon a person who either is invited to enter or remain upon the land as a member of the public for which the land is held open to the public *or* is invited to enter or remain on the land for a purpose directly or indirectly connected with business dealings with the possessor of the land. See Restatement of Torts § 332, *Berger v. Shapiro*, 30 N.J. 89, 187 A.2d 708 (1959).

Testimony by Ms. Myrtil indicated that she had invited only appellee's wife to come to the affair. (R. 623a).

Appellee, meanwhile, testified that he had received a direct invitation from Ms. Myrtil (R. 318a).

Appellee asserts that because he was "invited" to a party for the employees and patrons of Ms. Myrtil's business and establishment, this conferred some economic benefit upon Ms. Myrtil and thus raised appellee to the status of "invitee".

Appellant asserts that even if the invited guests could be construed to have conferred some benefit on Ms. Myrtil by reason of their presence ("benefit" because of the goodwill created among the employees and patrons toward her), appellee came uninvited and was permitted to remain only because of his wife—thus he conferred no benefit on Ms. Myrtil.

Clearly the jury should have been presented with the question of whether appellee was merely a social guest (thus relegating him to the status of "licensee") or whether he conferred some economic benefit on the possessor of land so as to raise his status to "invitee".

Thus we think the failure to instruct the jury as to both "licensee" and "invitee" status was error. The extent of the duty imposed upon a defendant in a negligence action is of the highest importance. If defendant owed plaintiff no duty of care as to the condition by which plaintiff was injured, then there can be no finding of negligence.

Appellee cites *Lordi v. Spiatta*, 133 N.J. 581, 45 A.2d 491 (1946) for the proposition that one attains "invitee" status merely because he is there via "invitation", express or implied. We believe the latter New Jersey cases clearly overrule this holding.

■ We also believe that the court erred in its instruction to the jury as to the relationship between Ms. Odette Myrtil and Chez Odette, Inc.

The Court charged as follows:

"There is testimony that Odette Myrtil and the corporation of which she was president rented this property . . . Now, for your purpose, at the time of this accident, Odette Myrtil and Chez Odette were in control of these premises." (R. 816a).

and

". . . Odette Myrtil or Odette Myrtil Logan was an employee of the corporation, Chez Odette, Inc., and as such, her acts should be considered by you to be the acts of the corporation." (R. 850a).

"Chez Odette, Inc." was the corporation thru which Ms. Myrtil's restaurant was operated.

Since the operative negligence alleged here was the failure to inspect the condition of the land, it became very important to determine whose duty it was to inspect (if such duty were owed). There is no question that the *lessee* in possession had that duty if such were owed. Thus, to whom owners leased the land was important.

If the corporation leased the land—then Ms. Myrtil had no liability individually, since this was a case of *non feasance* (i. e. passive negligence) (New Jersey and Pennsylvania are in accord on this point). See, *Chester Cambridge Bank and Trust Company v. Rhodes*, 346 Pa. 427, 31 A.2d 128 (1943) and *McGlyn v. Schultz*, 95 N.J.Super. 412, 231 A.2d 386 (1967).

If Ms. Myrtil leased the land as an individual, then the jury must find as a fact that she was acting for the corporation, in order to hold the corporation liable on the principle of respondeat superior.

We believe that certain factual issues were present at trial to preclude the judge from taking this issue from the jury.

Ms. Myrtil testified:

Q. "You had an oral lease between yourself and Mr. and Mrs. Etting for the use and occupancy of these premises for the period of approximately August 1 to September 15 of that year?"

A. "Right."

Q. "You or the corporation or somebody paid them rent; is that correct?"

A. "Yes."

Q. "What was it, a lump sum payment or weekly payments?"

A. "Lump sum, but I can't remember how much it was."

Q. "But from your best recollection, it was the corporation that paid it?"

A. "Yes."

(R. 636–37a).

Ms. Myrtil also testified that in 1968 (a year before this occurrence):

"I was using this as a place for me to try and relax a little and get away from the restaurant, which is rather a burden, especially owing to my advanced age; and so naturally, I tried to—I can't get away for more than three days at a time because I am a one-woman operation." (R. 637a).

We believe it was an important, factual issue for the jury's determination—whether she entered into the oral lease on behalf of herself or the corporation.

From the lower court opinion, it appears that the judge reasoned that the corporation was being used by Ms. Myrtil to further her personal interests. Thus, he treated them as one entity and, in effect, "pierced the corporate veil."

In Pennsylvania (New Jersey is in accord, see *Yackers v. Weiner*, 109 N.J.Super. 351, 263 A.2d 188 (1970); *Gardner v. The Calvert*, 253 F.2d 395 (3rd Cir. 1958) it is the accepted rule that a corporation is an entity separate and distinct from its shareholders, even when all the stock is held by one individual. *College Watercolor Group, Inc. v. Wm. Newbaren, Inc.*, 468 Pa. 103, 360 A.2d 200 (1976). Thus, no matter how "closed" the corporation is, it still remains a separate legal being until certain circumstances arise (e. g. fraud). The judge made no finding as to what circumstances were present, so as to permit the piercing of the corporate veil. We therefore conclude that it was error to instruct the jury that Ms. Myrtil and Chez Odette, Inc. were both in control of the premises. As long as they were separate legal entities, it had to be either *one* or the *other.*

Thus we conclude, that appellants' motion's for a new trial should have been granted.

We, however, do not conclude that the denial of appellants' motion for judgment n. o. v. was error.

■ We believe that sufficient direct and circumstantial evidence was produced to create a prima facie case of negligence.

Testimony established that appellant made his third dive into the canal from the dock. He entered the water either three or seven feet from the dock, depending upon who was to be believed. Expert testimony established that five feet from the dock the water was no more than 3.5 feet deep. No testimony was produced to the effect that anything was in the water that could have caused appellee's injuries. There was also testimony to the effect that no warnings

were posted and that Ms. Myrtil did not object to appellant swimming in the canal. It was also shown that other swimmers were present in the canal adjacent to the adjoining properties.

We conclude that the evidence adduced was sufficient to support a finding that a dangerous condition existed (i. e. the shallow water) where persons were permitted to dive and that the possessor of the land did not warn the guests of said condition.

Appellants also assert that the charge to the jury on contributory negligence was inadequate and misleading. We have reviewed the entire charge and conclude that the court adequately covered this point.

Appellants also assert three other issues (that the verdict against Chez Odette, Inc. should have been stricken, that the judgment of 1.2 million should have been stricken, that the Court en Banc should have heard the motion for a new trial) they merit no discussion since we grant a new trial.

Order denying appellants motion for a new trial is reversed and a new trial is granted.

Order denying appellants motion for judgment n. o. v. is affirmed.

MONTGOMERY, J., concurs in the result.