454 A.2d 99

**Daniel WIEGAND, a Minor, by His Parent and Natural Guardian, James WIEGAND, and James Wiegand, in His Own Right, Appellant,**

**v.**

**MARS NATIONAL BANK.**

Superior Court of Pennsylvania.

Argued April 26, 1982.

Filed Dec. 17, 1982.

**7.** As we have already indicated, the evidence was sufficient to support the conclusion that appellant was the gunman.

Joseph W. Conway, Pittsburgh, for appellants.

Chester S. Fossee, Pittsburgh, for appellee.

Before BECK, MONTEMURO and POPOVICH, JJ.

BECK, Judge:

Appellant Wiegand contends that the lower court erroneously denied his motion to remove a compulsory nonsuit. We find that the compulsory nonsuit was properly granted, and affirm the lower court's order.

In May 1975, appellant, then sixteen years old, sustained an injury while playing football on an empty lot across the street from the bank. The lot is owned by the bank, and for some years has been given over to the local residents as a meeting place for community affairs and recreational activities. In 1974, the bank allowed the Kiwanis Club to erect a Christmas tree on the lot. A Kiwanis Club member who installed the tree secured it by putting a stake in the ground next to the tree trunk and tying the trunk to the stake. After Christmas, the club member and his sons removed the tree, but were unable to remove the stake due to frozen ground. They therefore pounded the stake below ground level with a sledge hammer and covered the site with earth so that it was not visible. Thereafter, an employee of the bank who mowed the grass in the lot never encountered the stake because it was not only below grass level, but also below ground level. In the spring, when the boys were playing ball, Wiegand removed his shoes and played in his socks. He tripped over part of the stake, which by then had emerged from a depression in the ground, and injured his foot.

In reviewing the lower court's decision in a nonsuit, we are bound by the well-established principle that nonsuit would be entered only in a clear case, and any conflict in the evidence must be resolved in the plaintiff's favor. This Court must accept as true the facts presented by the plaintiff and give him the benefit of all reasonable inferences arising from such evidence. *Deaver v. Miller*, 260 Pa.Super. 173, 393 A.2d 1209 (1978); *Norton v. City of Easton*, 249 Pa.Super. 520, 378 A.2d 417 (1977); *Pagano v. Redevelopment Authority of the City of Philadelphia*, 249 Pa.Super. 303, 376 A.2d 999 (1977); petition for allowance of appeal denied (1977).

The law has traditionally formulated the responsibilities and liabilities of landowners to those who enter the land in terms of the status of the entrant as an invitee, licensee, or trespasser. These are not self-defining terms, and in applying them to a set of circumstances we are guided by the definitions in the *Restatement, 2nd, Torts* (1965) §§ 328–343, which have been adopted by Pennsylvania law. *Jones v. Three Rivers Management Corp.*, 483 Pa. 75, 394 A.2d 546 (1978); *Farrell v. Bonner*, 424 Pa. 301, 227 A.2d 683 (1967); *Hager v. Etting*, 268 Pa.Super. 416, 408 A.2d 856 (1979); *Crane v. I.T.E. Circuit Breaker*, 443 Pa. 442, 278 A.2d 362 (1971).

We find no merit in appellant's argument that he was an invitee of the bank, and that therefore the bank was obligated to make the land safe for his use; i.e. that he was entitled to inspection to discover any latent defects, followed by repair or necessary warning. An invitee is defined as one invited to enter or remain on the land for a purpose for which the land is held open to the public. *Restatement*, §§ 332, 343.

We agree with appellee's and the trial court's characterization of Wiegand as a licensee; i.e. one who is privileged to enter the land only by virtue of the possessor's consent. The obligation to a licensee is that of exercising reasonable care to warn of dangerous conditions known to the possessor, and is distinguished from the obligation to an invitee

who has an implied assurance that the land has been made safe. *Restatement*, §§ 330, 341, 342.

While the courts no longer restrict the class of invitees to those from whom the owner of the land expects to derive economic benefit, the basis of liability is still predicated on encouraging others to enter the land for a purpose beneficial to the owner. The public is led to rely on an implied representation that the land has been prepared for their reception when the land is held open to the public. Prosser, *The Law of Torts* (4th ed. 1971), pp. 388–9.

In this instance, however, unrefuted testimony established that the empty lot used by the boys was visited by members of the community for a variety of activities (Centennial celebration, casual meetings, recreational outings, etc.) and was never marked off for the purpose of a ball park or playing field. There were no planned athletic facilities or organized games. Young people ordinarily congregated to talk on the sidewalks or sit on the park benches, with occasional spur of the moment games of frisbee or football. R. 63–4. No evidence established that the bank invited appellant onto the lot for the purpose of playing football or any other athletic game. R. 44–5.

"When a landowner tacitly permits the boys of the town to a play ball on his vacant lot they are licensees only; but if he installs playground equipment and posts a sign saying that the lot is open free to all children, there is then a public invitation, and those who enter in response to it are invitees." *Restatement* § 332, comment (b). We agree with the court below that Wiegand was a licensee, and the bank therefore had no duty to inspect for hidden dangers. Its liability to licensees is limited to harm caused by conditions of which the owner has knowledge or reason to know. No one from the bank participated in the erection of the tree or its removal. The Kiwanis men who removed the tree buried the stake and covered it with dirt. Appellant Wiegand himself testified that the stake was not visible, and after he hurt his foot he had to search for it to find it.

■ Furthermore, this Court has held that where evidence indicates that a harmful condition on land is traceable to persons ordinarily not accountable to the owner, the owner is not liable absent evidence proving either actual notice or the existence of the condition for such a length of time that exercise of reasonable care would have led to its discovery. *Moultrey v. Great Atlantic and Pacific Tea Co.*, 281 Pa.Super. 525, 422 A.2d 593 (1980); petition for allowance of appeal denied (1981). Since the bank's employee responsible for mowing the grass on the lot did not encounter the stake in the spring of 1975 prior to the accident, we conclude that the bank was reasonably unaware of its protrusion.

■ Wiegand alternatively argues that the bank was liable to him for his injury as a trespassing minor under the standards articulated in the Restatement § 339:[1]

"A possessor of land is subject to liability for physical harm to children trespassing thereon caused by the artificial condition upon the land if

"(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and

"(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and

---

**1.** Prior to the formulation of § 339, the principles governing an owner's liability to trespassing children were governed by the "attractive nuisance" doctrine and the "playground rule." The "attractive nuisance" doctrine imposed liability on owners for injuries to trespassing children arising from "alluring" conditions on the land. The "playground rule" was an exception to the general rule which absolved owners of duty to trespassers. The rule imposed liability in those instances where dangerous instrumentalities were in an area recurrently used by children as a play area. Pennsylvania adopted § 339 in *Bartleson v. Glen Alden Coal Co.*, 361 Pa. 519, 64 A.2d 846 (1949), in which the Court held: "To the extent that past cases are in conflict with § 339 they are no longer authority" (at 851). In *Dugan v. Pennsylvania Railroad Co.*, 387 Pa. 25, 127 A.2d 343 (1956) we reiterated that § 339 supercedes and supplants the playground rule in our law.

"(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and

"(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and

"(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children."

The bank argues that sixteen year-old Wiegand was too old to be considered a child within the meaning of § 339. While it is true that in most instances the rule is applied to children of tender years, the *Restatement* does not impose an age limit. There is some precedent in cases involving unusual or deceptive instrumentalities for finding liability to children up to the age of seventeen.[2] Nevertheless, appellant's application of § 339 is misplaced. For a possessor of land to be liable to a trespassing child for injuries resulting from the condition of the land, the possessor must know or have reason to know of the condition. The *Restatement* explains that "the possessor is under no duty to inspect or police his land to discover whether such a condition exists." § 339, comment (h). *Rush v. Plains Twp.*, 371 Pa. 117, 89 A.2d 200 (1952); *Whigham v. Pyle*, 224 Pa.Super. 6, 302 A.2d 498 (1973); *Norton v. City of Easton*, 249 Pa.Super. 520, 378 A.2d 417 (1977).

■ Finally, the bank is further insulated from liability by 68 Pa.S.A. § 477–1 et seq., "Recreation Use of Land and Water," enacted in 1966 to encourage land owners to make land and water areas available to the public for recreational purposes. The Act provides (§§ 477–3, 477–6) that an owner of donated land has no duty of care to keep premises safe for entry or use by others, or to warn of dangerous conditions, and is liable only for malicious failure to guard or warn.

2. 113 *U.Pa.L.Rev.* 563 (1965); 16 ALR 3d. 80–81.

We therefore conclude that viewing all the evidence in the light most favorable to appellant Wiegand, that he has not established liability on the part of the bank.

The order of the lower court is affirmed.