571 A.2d 474

Paul J. CHIRICOS, Appellant,

v.

FOREST LAKES COUNCIL BOY SCOUTS OF AMERICA, William S. DeLong, Robert H. DeLong and Shirley S. DeLong, His Parents.

Paul J. CHIRICOS, Appellee,

v.

FOREST LAKES COUNCIL BOY SCOUTS OF AMERICA, William S. DeLong, Robert H. DeLong and Shirley S. DeLong, His Parents.

Appeal of William S. DeLONG and Robert H. DeLong and Shirley S. DeLong, His Parents.

Superior Court of Pennsylvania.

Argued Oct. 25, 1989.

Filed March 20, 1990.

492

Lawrence A. Durkin, Scranton, for appellant.

Randall W. Turano, Stroudsburg, for appellee.

Before MONTEMURO, POPOVICH and CERCONE, JJ.

POPOVICH, Judge:

This case involves cross-appeals from the April 5, 1989, order of the Court of Common Pleas of Wayne County entering summary judgment against the plaintiff/appellant Paul J. Chiricos, but denying the cross-claim of the co-defendants/appellants William S., Robert H. and Shirley S. De-Long against the co-defendant/appellee Forest Lakes Council, Boy Scouts of America. We affirm.

In determining whether the order issued is to be affirmed, we are required under Pa.R.Civ.P. 1035(b) to examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, to ascertain whether the record shows that there is no genuine issue as to any material facts and that the moving party is entitled to a judgment as a matter of law.

Under such a standard, the record discloses that on February 25, 1984, the 13–year–old William S. DeLong informed one of his parents that he was going for a ride on his Suzuki 185 all-terrain vehicle (ATV). Accompanying William was his 12–year–old friend Jeffrey John Rowen; he would be riding a motorcycle.

The terrain over which the boys had decided to travel was to consist of the Lake Wallenpaupack Estates, which is adjacent to the 560–acre Forest Lakes Council Boy Scouts of America reserve. Dissecting the reserve is Legislative Route 951, and it had to be crossed to reach a site on the reserve known to the youth as "Goose Pond". This was a location where the boys had ridden in the past. They did so even though they were aware that the site was private property and had some "no trespassing" signs posted throughout the campgrounds. In fact, William's father

(Robert) admitted to informing his son not to enter Goose Pond since it was known that the Boy Scouts did not want people riding on their property.

Even though it was not uncommon to see kids engaging in "hill climbs" on "Pump Station Hill", William was "specifically told Goose Pond was off limits" by his father.

On the date in question, William and Jeffrey first drove over a series of trails in Lake Wallenpaupack Estates. Thereafter, the two boys crossed Route 951 and this placed them in the Boy Scouts' camp; it was "just someplace also to go".

As William was in the lead, with Jeffrey following, he was in the process of traversing a grade in the dirt path leading off the property and onto Route 951 when he saw a scoutmaster (the plaintiff Chiricos) "running" toward him waving his hands. It seems that Chiricos, once he heard the sounds of the ATV and motorcycle, left his position on a nearby hill to pursue the riders some one hundred feet away.

Chiricos stationed himself in the path of William's ATV and was struck. The contact resulted in Chiricos being struck on his right leg by the left, rear tire of the ATV, and it flung him into the air. His body landed half on Route 951 and the remainder came to rest on Boy Scout property. William continued to drive from the scene with Jeffrey following.

Efforts on the part of the plaintiff to have the Boy Scouts commence criminal charges against William were to no avail. Consequently, aside from having William placed on two years probation for his conduct against the plaintiff, a writ of summons was issued against Forest Lakes Council Boy Scouts of America. In turn, a rule was entered on the plaintiff to file a complaint, which claimed in Count I that William was a trespasser on Forest Lakes' property and negligently caused the plaintiff to be injured when he was struck by William's ATV:

The Plaintiff stood on the berm of the road and waved his hands and shouted "Hey", continuously in order to warn the Defendant, DeLong, that he was a trespasser on private property and endangering the safety of the campers at Goose Pond Scout Reservation.... Paragraph 10. Count II alleged that William's parents were liable for his negligence. In Count III, Forest Lakes was charged with negligence in failing to secure the campgrounds and to enforce the "no trespassing" prohibition despite numerous prior incidents of trespassers and vandals on the premises. All of which was claimed to be, on the part of the DeLongs and Forest Lakes, the direct and proximate cause of the plaintiff's injuries.

The DeLongs filed an answer which denied, inter alia, that the son was a trespasser. And, as to striking the plaintiff, it was averred that the "Plaintiff attempted to grab the arms of the said William S. DeLong, which attempt caused him to come in contact with the vehicle being operated by ... William...." Paragraph 10. It was also alleged that "it was solely through the actions of the Plaintiff that the Defendant's vehicle struck him" and not through any negligence and carelessness of William. Paragraphs 11 & 12.

In the new matter portion of the DeLongs' reply, it was averred that through the plaintiff's own negligence in attempting to grab William, he "assumed the risk that would result from the actions which he took at the time alleged in the Complaint." Paragraphs 35–38.

The DeLongs also filed a cross-claim contending that the plaintiff's injuries were "due solely to the negligence" of Forest Lakes and rendered it "solely and individually liable to the Plaintiff or liable jointly with the Defendants or liable over to the plaintiff...." Paragraph 45.

Forest Lakes filed a motion for summary judgment. This was opposed by the plaintiff and co-defendant DeLongs in that they claimed that there were issues of fact to be resolved by a jury. However, the DeLongs argued in the alternative, seeking to join in the co-defendant Forest

Lakes' motion, that the plaintiff's assumption of risk should entitle them to the same relief sought by Forest Lakes.

In Forest Lakes' motion, it propounded in relevant part that:

11. Whether Plaintiff was an invitee or a licensee, the duty imposed upon Defendant, Forest Lake[s] Council, Boy Scouts of America, was to take reasonable precautions to protect and/or warn Plaintiff of possible dangerous conditions.

12. By posting the property and employing a maintenance man to patrol said property, Defendant, Forest Lake[s] Council, Boy Scouts of America, took all reasonable precautions required of it and therefore did not breach its duty towards Plaintiff.

13. Whether Plaintiff was an invitee or licensee, there was no obligation or duty upon Defendant, Forest Lakes Council, Boy Scouts of America, to protect Plaintiff against dangers of which Plaintiff was aware, or which were so obvious or apparent to Plaintiff that he could be expected to discover them for himself.

14. Because Plaintiff had actual knowledge of the alleged dangerous condition, Defendant, Forest Lake[s] Council, Boy Scouts of America, had no obligation or duty to protect Plaintiff from the danger known to him.

15. Defendants, William S. DeLong, Robert H. DeLong and Shirley S. DeLong, his parents, filed a Crossclaim against Defendant, Forest Lake[s] Council, Boy Scouts of America, alleging that Plaintiff's injuries were due solely to the negligence of Defendant, Forest Lakes Council, Boy Scouts of America.

16. Defendants, (DeLongs) have not alleged any duty towards Defendant, William DeLong, who was a trespasser upon the Goose Pond Scout Reservation.

17. If Defendant, Forest Lakes Council, Boy Scouts of America, did not breach their duty towards Plaintiff, and is not alleged to have breached any duty towards Defendants (DeLongs), it cannot be held liable over to or jointly liable with Defendant[s] (DeLongs).

With all the pertinent documents present for the evaluation of Forest Lakes' motion for summary judgment under Rule 1035, the court below concluded that the plaintiff was an invitee and, as such, was owed the duty of care defined by Restatement (Second) of Torts, Sections 343 & 343A.

From a reading of the record (pleadings, answers to interrogatories and depositions), the court held that:

> ... the danger posed by the Defendant's all terrain vehicle was obvious because both the presence of said vehicle and its risk would have been apparent to and recognized by a reasonable man, in the position of the visitor, exercising normal perception, intelligence, and judgment. *Restatement,* supra, section 343A comment b. It is also fair to state that the danger was known to the Plaintiff because he recognized that it was dangerous and appreciated the probability and gravity of the threatened harm. Although the question of whether a danger was known or obvious is usually a question of fact for the jury, the question may be decided by the Court where reasonable minds could not differ as to the conclusion. *Carrender v. Fitterer,* 503 Pa. 178, 469 A.2d 120 (1983). Therefore, the Court holds that the Boy Scouts owed no duty to the Plaintiff because of the obviousness of the danger and the Plaintiffs [sic] certain knowledge regarding it. The Forest Lake[s] Council Boy Scouts of America Motion for Summary Judgment must be granted.

By Opinion and Order dated April 5, 1989, Forest Lakes' motion for summary judgment as to Count III of the complaint was granted, whereas the DeLongs' crossclaim against Forest Lakes was dismissed. With the entry of the order in question on the docket, separate appeals therefrom were taken by Chiricos and the DeLongs.

The first claim posited for our review is one of whether the court below erred in finding no genuine issue of material fact existed as to whether Forest Lakes breached a duty of care owed to Chiricos. In particular, the categorizing of Chiricos as an invitee who possessed knowledge of the dangerous condition (of the ATV), as well as his

awareness of the hazards posed (by the ATV), were subject to material factual disputes more appropriately left to a jury to decide. And, that the "reputation" of Goose Pond as an area for motorized vehicles and the "precautions" taken by Forest Lakes to prevent continued use of its property for just such a purpose were open-ended questions not subject to summary judgment.

Further, Chiricos argues that Forest Lakes "should have expected" that he would "fail to protect himself from danger", "despite any knowledge on his part of the danger or its consequences and despite the obviousness of the danger", in insulating his boy scout troop from the "harm of the approaching ATV". He directs our attention to *Skalos v. Higgins*, 303 Pa.Super. 107, 449 A.2d 601 (1982) as the "best guidance on this most crucial point". Chiricos' Brief at 19–20.

Instantly, unlike the language made reference to by Chiricos in *Skalos*, we have no evidence of record to show that the possessor of land would have had reason to expect that the invitee's attention may have been *distracted* so that he would fail to protect himself, or that the possessor had reason to expect that the invitee would proceed to encounter the known or obvious danger because a reasonable man would have found the advantages to confronting the apparent risk outweighed the danger.

The record establishes that the plaintiff moved from a position of safety (on an archery field where his troop was playing football) to one where he consciously chose to encounter an ATV driven by William S. DeLong, which required that he traverse a section of land at least one hundred feet in length to make the contact. The plaintiff placed himself, with arms waving, in front of the oncoming ATV so as to bring it to a stop. Accordingly, one cannot in good conscience hold (not to mention no record evidence to find) that the plaintiff was "distracted" into failing to protect himself, or that a "reasonable man" would have elected to place himself in a position of danger. As was stated in the deposition testimony of Jeffrey John Rowen,

William S. DeLong, and Joseph Muchinsky (who was next to the plaintiff before his leaving to encounter the ATV), the plaintiff's placement of himself in a location where he was exposing himself to potential injury by moving in the direction of the ATV driven by William S. DeLong was one of choice and not fortuitous.

There is not a scintilla of evidence countenancing our reversal of the summary judgment on the grounds that issues of fact are yet to be resolved with regard to Chiricos' "possessing knowledge" and his "awareness" of the ATV and its attendant hazard. As written by the court below, "the Plaintiff was aware of the approach of the all terrain vehicle operated by the Defendant. He even ran toward it."

As to the efforts ascribed to Forest Lakes in preventing the use of ATVs on its property (hiring one Michael Karkoska as camp ranger and the posting of "no trespassing" signs) falling below its duty to protect invitees under Sections 343 & 343A of the Restatement (Second) of Torts, we find the argument wanting and do so upon a review of the applicable law, beginning with Sections 343 & 343A of the Restatement (Second) of Torts; to-wit:

Section 343. Dangerous Conditions Known to or Discoverable by Possessor

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

Section 343A. Known or Obvious Dangers

(1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them,

unless the possessor should anticipate the harm despite such knowledge or obviousness.

(2) In determining whether the possessor should anticipate harm from a known or obvious danger, the fact that the invitee is entitled to make use of a public utility, is a factor of importance indicating that the harm should be anticipated.

Both Sections 343 and 343A were examined by the Supreme Court in *Carrender v. Fitterer*, 503 Pa. 178, 469 A.2d 120 (1983), in concluding that the plaintiff/Carrender assumed the risk of an "obvious" and "known" danger in parking her vehicle in a space where she encountered ice as she alighted from her vehicle. Although there were several convenient parking spaces free of ice, the plaintiff kept her vehicle in the space she had chosen. Upon returning to her vehicle, she slipped on the ice and sustained injury.

At trial, Carrender won a verdict but on appeal the Supreme Court reversed this Court's affirmance of the judgment entered in her favor. In doing so, the *Carrender* Court found that the plaintiff was an invitee and looked to the Restatement (Second) of Torts, §§ 343 and 343A in deciding whether a dangerous condition on the land was "obvious" and "known" to the invitee so as to absolve the possessor of land of any liability.

The Court observed that usually the question of whether a danger was known or obvious was a question of fact for the jury, except the question may be decided by the court where reasonable minds could not differ as to the conclusion.

In reviewing Carrender's testimony, the Supreme Court concluded that the danger posed by the isolated patch of ice was both obvious and known, and that the defendants could have reasonably expected that the danger would be avoided. Additionally, the Court remarked that:

When an invitee enters business premises, discovers dangerous conditions which are both obvious and avoidable, and nevertheless proceeds voluntarily to encounter them,

the doctrine of assumption of risk operates merely as a counterpart to the possessor's lack of duty to protect the invitee from those risks. By voluntarily proceeding to encounter a known or obvious danger, the invitee is deemed to have agreed to accept the risk and to undertake to look out for himself. It is precisely because the invitee assumes the risk of injury from obvious and avoidable dangers that the possessor owes the invitee no duty to take measures to alleviate those dangers. Thus, to say that the invitee assumed the risk of injury from a known and avoidable danger is simply another way of expressing the lack of any duty on the part of the possessor to protect the invitee against such dangers.

\* \* \* \* \* \*

... the legal consequence of the invitee's assumption of a known and avoidable risk is that the possessor of land is relieved of a duty of care to the invitee.

503 Pa. at 188, 469 A.2d at 125 (Citations omitted). Accord *Malinder v. Jenkins Elevator & Machine Co.*, 371 Pa.Super. 414, 538 A.2d 509 (1988) (en banc).

Instantly, as in *Carrender* and *Malinder*, we have testimony from the plaintiff acknowledging an "awareness" of the "obvious" danger posed by that which caused injury. Yet, cognizant of the danger attendant to the ATV, the plaintiff made a conscious choice to place himself in a position of danger from which he could not extricate himself until it was too late to react to the oncoming four-wheel Suzuki 185 driven by William S. DeLong.

For example, during his deposition, Chiricos recounted how he "had to jump off one of the [Goose Pond] trails to let two or three of [the kids on the machines] go flying by", and this occurred a "couple of years before ... the accident".

As the plaintiff recalled the accident at issue, he left his position at the archery field where some members of his troop were playing football and traveled a distance of some 100–125 feet on foot to a point where he heard the sounds

of the ATV—near the pump station. As told by the plaintiff during questioning by counsel, the events surrounding his accident were as follows:

... That kid had more time in the world to see me flagging him down. I had my red hunting coat on, and I'm flagging, and I'm flagging. Literally, just waving my arms standing there. I ain't running at the kid. I ain't running away from the kid. I'm just standing there. Just flagging my arms, and he's coming up, hey, hey, and like I said the sucker put his head down, and cranked it and that was lights out time.

Q. Where was he at that time?

\* \* \* \* \* \*

A. Well, I couldn't get out of the way in time so he was only a couple of feet in front of me then ... I was flagging him for way over 100 feet. I was standing here. (indicating)

\* \* \* \* \* \*

Q. How much time elapsed between the time that you saw him crank the vehicle and the impact?

A. Merely seconds because when he cranked, I got creamed. Like I said all I can remember is saying, shit, he's not going to move.

\* \* \* \* \* \*

A. If I had a chance to get out of the way, I'd have got [sic] out of the way.

Q. At any time when he was approaching you at that time and you were flagging him down, did he slow down at all to your knowledge? Did you see him slow down?

A. No. He just seemed to keep coming steady. I figured any moment he's going to stop. Any moment he's going to stop or turn, and *I figured wrong.*

Q. When he struck you, was he going in a straight line, or did he turn his vehicle towards you if you can remember?

A. Going in a straight line. He was coming straight at me. Now, if he'd have turned within 20, 30 feet before

me in any direction, he could have stopped, turned around and went 360 degrees.

\* \* \* \* \* \*

Q. And the impact occurred within the confines of the public road [Route 951], is that correct?

A. Give or take an inch, you better believe it.

(Emphasis added)

In the case at bar, we have a situation where the plaintiff perceived the danger associated with placing himself in a stationary position in the direct line of an approaching all-terrain vehicle, having experienced dodging similar vehicles at the Goose Pond reserve to avoid being struck. Nonetheless, despite the "awareness" of the danger, the plaintiff, viewing the evidence in a light most favorable to him,[1] traveled an extended distance (from a position of safety) and positioned himself, with arms waving, on a direct line with the oncoming ATV, an "obvious" risk apparent to and recognizable by a reasonable man in like circumstances. See *Berman v. Radnor Rolls, Inc.*, 374 Pa.Super. 118, 132–33, 542 A.2d 525, 531–32 (1988).

The plaintiff did state that he had "no chance" to avoid being hit. However, the more important fact is that the plaintiff placed himself in a position of danger and remained there, exposing himself to injury and hoping that William would divert or stop his ATV before making contact. But, as admitted by the plaintiff in his deposition on this crucial factor, he "figured wrong", and the consequence for his miscalculation was the sustaining of injury. In other words, he "took no steps to protect himself." See *Atkins v. Urban Redevelopment Authority of Pittsburgh*, 489 Pa. 344, 351–52, 414 A.2d 100, 104 (1980).

■ Thus, because we find that the plaintiff "discovered" the dangerous condition on Forest Lakes' property, which was both obvious and *avoidable*, Forest Lakes owed no

1. See *Johnson by Johnson v. Walker*, 376 Pa.Super. 302, 305, 545 A.2d 947, 949 (1988).

duty of care to the invitee/plaintiff.[2] See *Carrender*, supra; *Malinder*, supra, and compare with *Howell v. Clyde*, 383 Pa.Super. 611, 614, 557 A.2d 419, 421 (1989); *Martin v. Recker*, 380 Pa.Super. 527, 537, 552 A.2d 668, 673 (1988); *Seewagen v. Vanderkluet*, 338 Pa.Super. 534, 543, 488 A.2d 21, 25 (1985). Further, we hold that, in light of the plaintiff's knowledge of the danger, the injury incurred by the plaintiff was not something that could or should have been anticipated/foreseen by Forest Lakes. See Restatement (Second) of Torts, § 343A and compare with *Skalos*, supra.

The next issue we need to address is the cross-appeal of the DeLongs, who claim the court erred in *denying* their Motion for Summary Judgment.

With regard to summary judgments, it is well-established that an order denying a motion for summary judgment is interlocutory, and, therefore, not normally appealable. See *Sweener v. First Baptist Church*, 516 Pa. 534, 538, 533 A.2d 998, 1000 (1987); 16 Stand.Pa.Prac., 2d, § 86:32 at 201–02. However, the grant of the co-defendant's (Forest Lakes') motion for summary judgment places the other co-defendants (DeLongs) out of court on their cross-claim[3] against Forest Lakes. See *French v. United Parcel Service*, 377 Pa.Super. 366, 370–72, 547 A.2d 411, 413–14 (1988).

Generally, an order is interlocutory unless it effectively puts the litigants out of court, terminates the litigation or

**2.** The plaintiff's presence on the property was for the purpose which required advance booking by the scoutmaster and the payment of a fee. With such factors present, we find the plaintiff to have been an invitee and not a licensee. See *Wiegand by Wiegand v. Mars Nat'l Bank*, 308 Pa.Super. 218, 454 A.2d 99 (1982).

**3.** See DeLongs' Answer, New Matter & Cross-claim at paragraph 42, wherein it is asserted the injury was due solely to the negligence of Forest Lakes, and, therefore, it (Forest Lakes) was alleged to be solely and individually liable or liable jointly with the DeLongs or liable over to the plaintiff. In fact, this "cross-claim" alleging sole, joint or liability over with Forest Lakes by the DeLongs was denied by the opinion and order of court dated April 5, 1989. Further, the claim that the trial court erred in dismissing the "cross-claim" of the DeLongs against Forest Lakes is preserved on appeal. (See DeLongs' appellate brief at pp. 3, 9, 16 and 30)

disposes of the entire case. *French,* supra. In applying this rule, "we must look beyond the technical effect of the adjudication to its practical ramifications." *Jackson v. Moultrie,* 288 Pa.Super. 252, 255, 431 A.2d 1033, 1034–35 (1981). The portion of the order which granted summary judgment in favor of the co-defendant (Forest Lakes) terminated the litigation against it by the DeLongs and constituted a final appealable order. *French,* supra. As noted in *Rossi v. Pennsylvania State University,* 340 Pa.Super. 39, 489 A.2d 828 (1985), an order granting summary judgment as to some defendants in a multiple defendant suit is a final appealable order as to those defendants released from the litigation. See also *Dash v. Wilap Corp.,* 343 Pa.Super. 584, 495 A.2d 950 (1985).

In concluding that the order denying Delongs' motion for summary judgment is appealable on its cross-claim against Forest Lakes, we must now consider the merits of the appeal.

As with Forest Lakes, in reviewing the denial of the DeLongs' Motion for Summary Judgment, we need to review the record in a light most favorable to the non-moving party to determine whether there is a genuine issue of material fact yet to be decided. Rule 1035. We find there is.

In reciting the facts surrounding the accident, the plaintiff stated that he saw the ATV approaching from a distance of a least one hundred feet. He was attired in a red hunting coat and waving his arms. Thus, the driver/DeLong had all the "time in the world to see" him flagging the ATV. Nonetheless, DeLong ran into the victim as his location in the roadway remained unchanged up until contact occurred. This was corroborated by Joseph Muchinsky.

On the other hand, DeLong's version of the events was one in which he attempted to evade the plaintiff, that it was the plaintiff who grabbed his arm to remove him from the ATV and that the plaintiff's movement toward DeLong

brought the victim in touch with the ATV. This was buttressed by an eye-witness, Jeffrey John Rowen, the other half of the riding team.

We have two versions: one indicates that DeLong tried to escape the plaintiff and was grabbed by him; the other version indicates that the plaintiff remained in one position, in plain view of the driver and was purposely struck. Thus, this matter is best left in the bailiwick of the jury to resolve under negligence principles. See Prosser, *Law of Torts*, §§ 29–31 (4th ed. 1971); Pa.'s Comparative Negligence Statute, 42 Pa.C.S. § 7102, which requires that there be two negligent acts: a breach of duty by the defendant to the plaintiff and failure by the plaintiff to exercise care for his own protection. *Carrender*, supra, 503 Pa. at 188, 469 A.2d at 125.

Thus, the DeLongs' Motion for Summary Judgment is denied.[4]

Order affirmed.

MONTENURO, J., files a concurring statement.

CERCONE, J., concurs in the result.

MONTEMURO, Judge, concurring:

I concur in the decision to affirm the summary judgment granted in favor of the Forest Lakes Council Boy Scouts of America. The record amply supports the trial court's finding that "... the Boy Scouts owed no duty to [Chiricos] because of the obviousness of the danger...." Op. of Trial Court, April 5, 1989, at 5. *See Carrender v. Fitterer*, 503 Pa. 178, 469 A.2d 120 (1983). Further, there is no evidence in the present case which would bring it within the rule of law enumerated in *Skalos v. Higgins*, 303 Pa.Super. 107, 449 A.2d 601 (1982) (possessor of land is not liable to

---

**4.** Because we have concluded that Forest Lakes owed no "duty" to the plaintiff, inasmuch as he perceived the danger and appreciated his circumstances, there would be no purpose served by requiring that it remain as a party to the litigation to somehow insulate the DeLongs from the plaintiff's allegations of negligence in the operation of the ATV and the supervision of William S. DeLong by his parents.

invitees for physical harm caused by obvious conditions on the land, unless the possessor should have anticipated the harm despite such obviousness).

Although I would affirm the dismissal of the cross-claim filed by the DeLongs against Forest Lakes, I would not address the oral motion for summary judgment raised by the DeLongs. As is evident from their appellate brief, the DeLongs' oral motion for summary judgment concerned the remaining litigation between Chiricos and the DeLongs.[1] This portion of the case is pending in the trial court and is not directly controlled by the court's decision to enter summary judgment in favor of Forest Lakes on the claims between Forest Lakes and Chiricos. Thus, a denial of summary judgment under these circumstances would result in an interlocutory order, not subject to appellate review.

1. This pending litigation involves issues concerning negligence in the operation of the ATV, negligence in the supervision of William S. DeLong by his parents, and the contributory negligence of Chiricos.